THE FIRST NATIONAL BANK OF CHICAGO, Ex'r of the Estate of Irna Phillips, Deceased, Plaintiff-Appellant, *v.* SCREEN GEMS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 57255, 57495 cons.

Opinion filed July 12, 1976.—Rehearing denied August 13, 1976.

Warren L. Swanson, of Chicago (Donald C. Dowling and David A. Lowe, of counsel), for appellant.

Defrees & Fiske, of Chicago (Thomas J. Johnson and Martin J. Campanella, of counsel), for appellee Screen Gems, Inc.

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, and Sydney B. McDole, of counsel), for appellee Elizabeth S. Corday.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Irna Phillips brought action against Screen Gems, Inc., arising out of a contract entered into by Irna Phillips, Theodore Corday and Allan Chase for presentation and exploitation of a dramatic serial composition suitable for radio, television and other uses and a subsequent contract entered into by Corday and Screen Gems, Inc. Upon the death of Irna Phillips, The First National Bank of Chicago, as executor of her estate, was substituted as plaintiff. Thereafter, the trial court granted a motion of Screen Gems to strike the original complaint. The court found that Theodore Corday and Allan Chase were necessary parties to the litigation. Plaintiff was granted leave to file an amended complaint joining them as additional parties defendant. On October 28, 1969, the amended complaint was filed joining Allan Chase and Elizabeth S. Corday, administrator of the estate of Theodore Corday as additional parties. The amended complaint alleged that Corday had died on or about July 23, 1966.

Summons was served upon Elizabeth S. Corday in her capacity as administrator, together with a copy of the amended complaint, by the sheriff in Hollywood, California. She filed a special appearance in these proceedings raising the issue of jurisdiction of the trial court over her person and a motion to quash the service of summons. Summons and a copy of the complaint were personally served upon Allan Chase by the sheriff in San Mateo County, California. Chase has not appeared in these proceedings.

On October 12, 1971, the trial court granted a motion of Corday to quash service of summons and also the motion of Screen Gems to strike and dismiss the amended complaint predicated upon failure of plaintiff to obtain jurisdiction over Corday, a necessary party. Plaintiff then filed an amended motion to vacate the order of dismissal together with a proposed second amended complaint. On January 10, 1972, the trial court entered an order finding that it had no jurisdiction over the defendant Corday and plaintiff's motion to vacate the prior order of dismissal was accordingly denied. Plaintiff has appealed.

In this court, plaintiff contends that the trial court erred in finding that

Corday was a necessary and indispensable party; in finding that the decedent Corday did not submit himself to the jurisdiction of the court; in denying plaintiff the right to obtain information by discovery; and that the doctrine of forum non conveniens does not apply to this case. Screen Gems urges that plaintiff has failed to join necessary parties; plaintiff may not charge Screen Gems on a contract to which it was not a party; the provisions of the contract between Phillips, Corday and Chase precluded maintenance of the action; there is no factual basis for jurisdiction of the court as to Corday and Chase and the motion to vacate the order of dismissal was properly denied. Defendant Corday, in a separate brief, contends that she was not subject to service of process outside of Illinois and that plaintiff's appeal should be dismissed. Our study has convinced us that disposition of the appeal rests upon the resolution of two issues which will be considered in order.

## I.

In determining whether Corday and Chase are necessary and indispensable parties, we must first look at the provisions of the two pertinent written agreements. On November 1, 1961, Phillips, Corday and Chase entered into a so-called ownership agreement. On September 15, 1964, Corday alone entered into a so-called agency agreement with Screen Gems. The first agreement recited that each of the parties owned a one-third interest in a dramatic serial composition which they wished to have presented and disseminated to various media for public presentation. Each party was to be entitled to one-third of fees received in connection with this property resulting from any type of exploitation. In event of an outright sale, each party was to be entitled to one-third of the net price but there would be no sale or other exploitation without unanimous written consent. Each party agreed not to sell or assign his or her interest without giving the others a right of first refusal to purchase such interest upon the terms proffered. This provision was not to impair the right of any party to transfer his or her interest to a corporation which such party controlled.

Phillips agreed to serve as story editor of the project with Corday to serve as executive producer and Chase to be editor of the script. The agreement also contained provisions which would reduce the interest of any party in event of his or her failure to perform under certain circumstances with such diminution to accrue to the benefit of the remaining parties. All controversies arising out of or relating to this agreement were to be determined by arbitration to be held in New York pursuant to the laws of that State, or in any other State in which two of the three parties resided at the time of the arbitration. The arbitration was to proceed in accordance with the rules of the American Arbitration

Association. Judgment upon any arbitration award could be entered in the Supreme Court of the State of New York or any other court having jurisdiction. The agreement itself was to be construed in accordance with the law of New York.

The so-called agency agreement of September 15, 1964, was prepared upon the letterhead of Screen Gems showing an address in Hollywood, California. This letter was signed by Screen Gems, addressed to Theodore Corday and accepted by him in writing. In this letter agreement, Corday warranted that he, Phillips and Chase were the co-owners of the dramatic, literary property in question and that Corday had full written authority from the co-owners to enter into the agreement. The letter granted Screen Gems sole and exclusive right to offer the property for sale and license in any manner in any medium. Screen Gems was to receive a stated percentage of proceeds from licensing for daytime television use. For television licensing, Corday was to receive $750 per week for each week of the first year of such broadcasts, which was to be paid on behalf of all co-owners, with an increase to $1000 per week for each week after the first year. The agreement also contained provisions for compensation to Phillips and Corday for certain sums specified as having been advanced by them. Screen Gems' rights to distribute and license were to continue for one year, but in the event that it caused a "pilot" program to be produced, its right to distribute was to be extended for an additional year after completion of production of said pilot. And, if Screen Gems licensed the television program to a national network, it should retain its rights "in and to the property in perpetuity."

Plaintiff's complaint alleged that Phillips had been informed that offers had been made for purchase of the television serial. By her attorney she had requested advice of existence of said offers and defendant Screen Gems had refused. The complaint alleged that Screen Gems considers itself to be the owner of the production to the exclusion of the agreement which identified Phillips as a co-owner. It alleged that Phillips was informed that Screen Gems may have received remuneration in excess of the percentage provided in the agency agreement and, if such were the case, plaintiff as one co-owner would be entitled to the excess thus received. The complaint prayed for declaratory relief and an accounting for plaintiff's portion as one of the co-owners.

After the court had ruled that Corday and Chase were necessary parties, Phillips filed an amended complaint. The administrator of the estate of Corday and Chase were added as parties. The amended complaint alleged that numerous meetings, conferences and creative and contractual activities took place in Chicago, Illinois, where Phillips lived, in connection with the development of the serial program and that the program was being broadcast to television viewers within Illinois. Copies

of the ownership agreement between Phillips, Corday and Chase and of the agency agreement between Corday and Screen Gems were appended to the amended complaint. The amended complaint also contained the same allegations as the complaint concerning alleged offers to purchase the program received by Screen Gems which that defendant refused to disclose. The amended complaint alleged that plaintiff was informed that Screen Gems considered itself to be the sole owner of the program and repeated the allegations that Screen Gems had received excess remuneration to which plaintiff as one of the co-owners was entitled. The amended complaint prayed for declaratory relief as to the rights of plaintiff as one of the co-owners under the ownership and agency agreements; a determination that Screen Gems had breached its agreement and also its discharge; and an accounting in favor of Phillips as co-owner for her portion of excess profits received by Screen Gems. The amended complaint also prayed deposit by Screen Gems with the clerk of the court of all funds and revenues from the production pending further order of court.

The doctrine of necessary parties is firmly fixed and established in the law of Illinois. Perhaps the most frequently cited case in this regard is *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000. The court there stated that "all persons who are legally or equitably interested in the subject matter and the result of the suit must be made parties. The interest, however, must be a present substantial interest as distinguished from a mere expectancy or future contingent interest." (385 Ill. 414, 422.) The court also stated that "all persons should be made parties who are legally or beneficially interested in the subject matter of the litigation, and who will be affected by the decree, so as to enable the court to dispose of the whole controversy." 385 Ill. 414, 423.

■■ As corollaries to these principles, it has been held that a court should not proceed to a decision of the case on the merits where jurisdiction has not been obtained over all necessary parties. In fact, it is the duty of the court upon its own motion to take notice of the lack of necessary parties and to require that they be brought before the court. This entire doctrine has been described as being "absolute and inflexible" and as applying to trial courts as well as to reviewing courts. It has been held that orders entered without jurisdiction of indispensable parties are "null and void." (See *Glickauf v. Moss* (1974), 23 Ill. App. 3d 679, 683, 684, 320 N.E.2d 132, and various authorities there cited.) We find the same principles completely stated and authorities cited in *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115, *leave to appeal denied*, 61 Ill. 2d 602. There, judgment was entered declaring a certain lease to be terminated. The lessee was a corporation which had relinquished possession of the demised premises to S.N.H., Inc. The

lessee was not made a party to the suit for declaratory judgment. This court reversed because of the omission of the lessee, a necessary party. The court pointed out that a finding might ultimately be made that there had been a valid assignment of all rights under the lease from the lessee to the corporation in possession but that this question remained to be determined and that even if it had been determined in a manner favorable to the necessary but absent party, this fact would not serve to validate the judgment entered unless the court had obtained jurisdiction over the person of the absent party. See 32 Ill. App. 3d 110, 121.

■■ In the case at bar, it is our opinion that Corday and Chase were both necessary parties. The original ownership agreement of 1961 specifies various contingencies which might affect the size and amount of plaintiff's share in the enterprise with consequent diminution or augmentation of the shares and interest of both Corday and Chase. The operation or even the existence of these various contingencies could not be fairly determined unless Corday and Chase were properly before the court. Plaintiff seeks a determination that Screen Gems has received funds in excess of its proper share for which it should account. If the trial court would so determine, Chase and Corday as co-owners would undoubtedly have a beneficial interest in the fund thus created. In such a situation, their potential interest in this fund was sufficient to make them necessary and indispensable parties to any litigation which would affect the amount of such fund or its very existence. Thus, in *Oglesby* the issue arose as to whether certain real estate was owned under a trust or a will. The trust included a limited power of appointment. An actual exercise of that power was a disputed issue. The Supreme Court held that potential appointees under the power were necessary parties and the ruling of the trial court was reversed "for lack of necessary and indispensable parties." 385 Ill. 414, 431.

We approve the ruling of the trial court that Theodore Corday and Allan Chase, or their personal representatives, are necessary parties and that the cause should not proceed until they are properly brought before the court.

## II.

It remains to consider the success or failure of plaintiff's efforts to obtain jurisdiction over these necessary parties. The Civil Practice Act of Illinois provides that any person, even though not a citizen or resident of Illinois, may submit himself or his personal representative to the jurisdiction of the courts of Illinois if he in person or through an agent transacts "any business within this State" in connection with any cause of action arising from such activities. (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(a).) Whether the record is ample to support the existence of jurisdiction over the person

of any party depends upon the resolution of two issues (*Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 246, 219 N.E.2d 646, *leave to appeal denied,* 35 Ill. 2d 629):

" * * * (1) [W]hether the defendant submitted itself to the jurisdiction of the courts of Illinois by transacting business within Illinois and (2) whether section 17, if construed to authorize jurisdiction over the defendant, would violate the due process clause of the Fourteenth Amendment to the Constitution of the United States * * *."

The factual basis for assertion and existence of jurisdiction over the person of a nonresident defendant depends upon the allegations of facts in the complaint before the court. *Nelson v. Miller* (1957), 11 Ill. 2d 378, 393, 143 N.E.2d 673, cited in *Koplin v. Saul Lerner Co.* (1964), 52 Ill. App. 2d 97, 104, 201 N.E.2d 763.

■■ Examining the amended and proposed second amended complaints, we find no allegations which have any bearing upon jurisdiction of the court over the person of Allan Chase. As shown, he was personally served with summons and a copy of the complaint in San Mateo County, California. He has never appeared in the cause and his present whereabouts are unknown. We therefore must conclude that the circuit court did not at any time obtain jurisdiction over the person of Allan Chase.

As regards defendant Corday, the amended complaint alleged that he died on or about July 23, 1966, and that Phillips was informed that Elizabeth S. Corday was appointed administrator of his estate on October 17, 1966, and has been acting as such since that day. There is no allegation in the amended complaint as to where the estate of Theodore Corday was being administered. The ownership agreement appended to the amended complaint as an exhibit shows the residence of Phillips as being in Chicago and that both Corday and Chase live in New York. The agreement provided that it should be construed in accordance with the law of New York. The amended complaint alleged that numerous meetings, conferences and creative and contractual activities in connection with development of the television serial took place in Chicago, Illinois, and that this serial is currently being broadcast to television viewers within Illinois and has been and is currently written in Illinois. There is no specific allegation who was present and what was discussed at any meetings, conferences or other activities within the State of Illinois. In our opinion, these sketchy allegations fall far short of demonstrating that Corday, during his lifetime, transacted business within Illinois so as to submit himself to the jurisdiction of Illinois in a cause of action "arising from" the doing of such acts.

Nor is this situation remedied in any manner by the proposed second

amended complaint. Various letters and correspondence between the parties are appended to the proposed second amended complaint as exhibits. Without detailing this correspondence it indicates only that Corday met with Phillips in Chicago during the early part of 1962 concerning possible licensing of the concept of the serial program with a totally different party which was never consummated. Also, Corday met with plaintiff early in 1966 in Chicago concerning one script for the serial, and Elizabeth S. Corday met with plaintiff in August of 1966 and early 1967 concerning additional scripts. These two meetings took place after the death of Corday.

The difficulty arising from these pleadings and their deficiency in serving as a proper basis for assertion of jurisiction over the administrator, Elizabeth S. Corday, is pointed up and well illustrated by use of the phrase "arising from" in the statute above cited. The purpose of this language "is to insure that there is a close relationship between a nonresident defendant's jurisdictional activities and the cause of action against which he must defend. * * * [This phrase] requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts." *Koplin*, 73 Ill. App. 2d 242, 252-53.

■■ Upon full examination of plaintiff's amended complaint and the proposed second amended complaint, we hold that plaintiff's claims for declaratory relief and an accounting neither arise from nor lie in the wake of Theodore Corday's alleged activities in Illinois. Each activity which a nonresident defendant may carry on in Illinois has legal significance not in and of itself but only with reference to the business being transacted and the ties or connections between that business and the acts of the individual. In other words, there must be a close relationship between the activities of the nonresident defendant and the cause of action against which he must defend. We are obliged to conclude that the order appealed from quashing service of process upon Elizabeth S. Corday as administrator was properly entered.

It follows from the above that it would be superfluous to consider the second concept above set forth with reference to whether assertion of jurisdiction over the defendant Corday would violate principles of due process under the Federal Constitution. Applied in the context of the case at bar, due process would require that assertion of jurisdiction over this defendant be based upon minimum contacts within the State of Illinois so that the "maintenance of the suit does not offend traditional concepts of fair play and substantial justice." *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

■■ It must also be recalled that "determination of whether sufficient minimum contacts exist cannot be answered by applying a formula or a

rule of thumb, but by ascertaining what is fair and reasonable in the particular circumstances." (*Fox v. Suit Links, Ltd.* (1972), 4 Ill. App. 3d 657, 660, 281 N.E.2d 684, citing *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173.) We cannot say from this record that when these three individuals entered into their ownership agreement they engaged in any act or conduct by means of which they invoked the benefit or protection of the law of Illinois. (4 Ill. App. 3d 657, 660.) On the contrary, they expressly provided in their agreement that it was to be construed in accordance with the law of New York.

It need hardly be added that the extremely minimal contacts and activities of Corday in Illinois during his lifetime were not sufficiently related to the subject matter of the cause of action here sought to be asserted so that it would be fair or reasonable to compel his administrator to join in this action and to defend in Illinois. On the contrary, in our opinion, concepts of fair administration of the law require protection for Corday or his estate against being compelled to answer claims brought within Illinois, a locality with which the defendant, according to the pleaded facts, had little or no association and which might constitute an undue burden or disadvantage to him or his estate. See *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 441, 176 N.E.2d 761.

As above indicated there are other contentions raised by the parties, none of which require consideration in view of the result above reached. In our opinion the motion by Elizabeth S. Corday, administrator, to dismiss this appeal falls within this category. The orders appealed from are accordingly affirmed.

Orders affirmed.

BURKE and MEJDA, JJ., concur.