SEARS BANK AND TRUST COMPANY, Plaintiff-Appellee, *v.* SID LUCKMAN *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 77-1298, 77-1319 cons.

Opinion filed June 7, 1978.

William H. Gram and William M. Lloyd, both of Chicago, for appellant Federal Reserve Bank of San Francisco.

Albert E. Arnstein, of Chicago, for other appellants.

Burton Y. Weitzenfeld, Peter D. Kasdin, and Richard K. Wray, all of Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This is an interlocutory appeal taken by defendants First Los Angeles Bank and the Federal Reserve Bank of San Francisco from the trial court's order denying their motions to quash service of summons. The trial court

found that its order involves a question of law as to which there is substantial ground for difference of opinion and certified the order for immediate appeal. We permitted prosecution of the appeal pursuant to Supreme Court Rule 308. (Ill. Rev. Stat. 1975, ch. 110A, par. 308.) The sole issue to be determined is whether the court properly exercised *in personam* jurisdiction over the nonresident defendant banks pursuant to the Illinois long-arm statute. Ill. Rev. Stat. 1975, ch. 110, par. 17(1).

Plaintiff, Sears Bank and Trust Company, is an Illinois banking corporation. In its amended complaint Sears Bank alleges that on or about December 9, 1975, Barry Marlin, a citizen of California, delivered to it a check dated December 4, 1975, in the amount of $25,000 which he drew upon his account at First Los Angeles Bank in Los Angeles, California, payable to "Sears Bank & Trust Co." The check was issued to discharge an alleged indebtedness due plaintiff. Upon receipt of the check, Sears Bank allegedly transmitted it to First National Bank of Chicago for collection. First National allegedly forwarded the check to Bank of America National Trust and Savings Association in San Francisco whereupon the check was sent to the Federal Reserve Bank of San Francisco. The Federal Reserve Bank transmitted the item to First Los Angeles Bank for payment. First Los Angeles Bank dishonored the check because of insufficient funds.

Sears Bank alleges that it did not receive notice of the dishonor until January 8, 1976. Believing the check had been honored, it returned the note which secured the underlying obligation of the drawer of the check. Sears Bank further charges that defendant banks negligently mishandled the check during the collection process so that it was not timely delivered to First Los Angeles for payment nor was it timely honored by First Los Angeles. Sears Bank further charges defendant banks with mishandling of the check after it was dishonored so that plaintiff was not afforded timely notice of its dishonor.

In support of the Federal Reserve Bank's motion to quash service of summons, R. L. Rasmussen, administrative services officer of the Los Angeles branch of the Federal Reserve Bank, filed his affidavit concerning the handling of the check by the Federal Reserve Bank of San Francisco. He stated that the Federal Reserve Bank of San Francisco operates solely within the geographical limits of its territory which includes California, Oregon, Idaho, Washington, Utah, Nevada, Arizona, Alaska, and Hawaii. The Federal Reserve Bank processes checks, some of which have been deposited in Illinois banks and some of which are payable to Illinois banks. All processing of checks, however, takes place within the Federal Reserve Bank's geographical district. Rasmussen further stated that the Federal Reserve Bank first received the check in question as a cash item from Bank of America-Los Angeles on December 12, 1975. That same

day, the Federal Reserve Bank stamped its endorsement on the check and transmitted it to First Los Angeles, the drawee. At 8:50 a.m. on December 17, an employee of First Los Angeles, identified only as Steve, telephoned a check clerk, Joan Gedeon, at Federal Reserve Bank. Steve told her that a $25,000 item was being returned because of insufficient funds. Steve informed Gedeon that the prior endorser was Bank of America-Los Angeles and that the item was payable to Sears Bank. Gedeon recorded the information and relayed the information by telephone to an employee of Bank of America-Los Angeles. That same day the Federal Reserve Bank received the check as a return item and forwarded it to Bank of America-Los Angeles.

On December 30, 1975, the Federal Reserve Bank received the check as part of a "low speed" cash letter from Bank of America-Los Angeles. The Federal Reserve Bank processed the check and transmitted it to First Los Angeles on January 5, 1976. On the afternoon of January 7, a First Los Angeles employee telephoned a check clerk at the Federal Reserve Bank about the check and on the following morning the clerk relayed the information about the check to an employee at Bank of America-Los Angeles. That same day the Federal Reserve Bank received the item from First Los Angeles and sent it to Bank of America-Los Angeles.

Thomas J. Kempf, executive vice-president of First Los Angeles, executed an affidavit in its behalf. In it he stated that First Los Angeles has never maintained an office or place of business in Illinois and has never employed an officer or agent in Illinois. The bank maintained only two offices, one in Los Angeles and the other in Beverly Hills, California.

The two banks each moved to quash service of summons issued pursuant to the Illinois long-arm statute. (Ill. Rev. Stat. 1975, ch. 110, par. 17(2).) The banks contend that Sears Bank failed to allege facts sufficient to render them amenable to the jurisdiction of Illinois courts.

The long-arm statute provides in pertinent part:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

* * *

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section."

In *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90

L. Ed. 95, 66 S. Ct. 154, the Supreme Court set out the requirements which must be satisfied in order for a state to exercise personal jurisdiction over a non-resident defendant. The court held that due process demands a defendant to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154.) In *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, the court reaffirmed its *International Shoe* holding, stating that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Whether the type of activity conducted within Illinois is adequate to satisfy due process requirements, however, depends upon the facts in the particular case. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761.) It is the nature and quality of defendant's conduct which must be assessed when determining whether *in personam* jurisdiction can be properly exercised. (*Honeywell, Inc. v. Metz Apparatewerke* (7th Cir. 1975), 509 F.2d 1137.) The test, therefore, is a flexible one which emphasizes the reasonableness of subjecting a defendant to suit in a foreign jurisdiction. *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 352 N.E.2d 285.

■■ In *Jack O'Donnell Chevrolet, Inc. v. Shankles* (N.D. Ill. 1967), 276 F. Supp. 998, the district court dealt with an issue almost identical to the present one. Plaintiff was an Illinois automobile dealership which sued an Alabama bank for failing to give timely notice of the dishonor of drafts issued by a customer. Plaintiff charged the bank with negligent failure to notify it of the dishonor within a reasonable time, failure to give timely notice as required under Alabama law and conspiracy with the drawer or his agents to honor and pay only those drafts authorized by the drawer, regardless of whether other drafts were properly payable. The court upheld the exercise of jurisdiction as to the count charging conspiracy but held that it lacked jurisdiction as to the tort and contract counts. The court reasoned the conspiracy charge contained an allegation of scienter which established knowledge on the part of the bank that the consequences of its actions concerning the checks would occur in Illinois. The other counts, however, lacked the element of contemplation of possible effects in Illinois, thus failing to establish a jurisdictional basis. The court expressly rejected plaintiff's argument that, since it was in the banking business, defendant contemplated that its interstate transactions would have effects felt in other states and it should be subject to jurisdiction in those states for disputes arising therefrom. The court stated in language pertinent to the present case:

"Checks often follow circuitous routes during the clearing process, and in view of the contractual obligations which the various banks make during the chain, it would be unwise policy to hold a bank subject to the jurisdiction of any foreign state regardless of how fortuitous the bank's contact therewith, merely because the bank happens to conduct a business with certain interstate ramifications." 276 F. Supp. 998, 1004.

■■ Concerning the conduct of the Federal Reserve Bank, we believe that the allegations of Sears Bank are insufficient to establish *in personam* jurisdiction in Illinois. It is undisputed that all the alleged actions or omissions of the Federal Reserve Bank took place in California. The record reveals that when handling the check drawn on First Los Angeles Bank, defendant Federal Reserve Bank dealt only with its prior endorsers, Bank of America-Los Angeles and First Los Angeles Bank. There were no visits by its employees to Illinois, nor were there any telephone calls or letters to Illinois concerning the check. The face of the check read only: "Pay to the order of Sears Bank & Trust Co." We find that the requirement that there be certain minimum contacts with the forum state so that a lawsuit does not offend traditional notions of fair play and substantial justice is absent in the present case. We hold the Federal Reserve Bank's contact with Illinois to be too tenuous to satisfy due process standards.

■■ Similarly, the only acts allegedly committed by First Los Angeles Bank occurred in California. Sears Bank has alleged only that the defendant bank dishonored for insufficient funds a check drawn upon it by one of its depositors and negligently failed to give timely notice of the dishonor. The record shows that First Los Angeles Bank only dealt with one other California bank and there is no competent evidence in the record to establish that First Los Angeles was even aware that the payee of the check was an Illinois citizen. Although Sears Bank asserts that the effects of the allegedly tortious acts were felt in Illinois, First Los Angeles Bank's contact with Illinois is almost nonexistent and is insufficient to compel it to defend a suit in our jurisdiction.

The cases which Sears Bank relies upon for its assertion of Illinois jurisdiction are readily distinguishable from the present one. In *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, jurisdiction was premised on the fact that the manufacturer of the defective component part, in the ordinary course of business, had placed its product into the stream of commerce so that it could have contemplated that the product was likely to enter Illinois and cause injuries. In the present case, however, the Federal Reserve Bank of San Francisco was merely the conduit of a check drawn on a California bank and which had been transmitted to it by another California bank.

First Los Angeles Bank was the drawee which received the check for payment from a California bank and returned it to that same bank because of insufficient funds. The lack of any control over the origin of the check and the lack of an allegation of scienter on the part of the two defendant banks render their connections with Illinois too remote to serve as a basis for the exercise of *in personam* jurisdiction.

■▌ In *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.* (N.D. Ill. 1973), 358 F. Supp. 1001, defendant's conduct consisted of giving false information concerning securities over the long-distance telephone to plaintiff, an Illinois resident. In other cases where jurisdiction was found to exist, defendants had initiated the contacts with plaintiffs and through their activities availed themselves of the benefits and protections of Illinois law. (See *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78; *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324.) In establishing jurisdiction, it *is* the defendant's acts, not those of plaintiff, which are relevant. (*Rosenthal & Co. v. Dodick* (N.E. Ill. 1973), 365 F. Supp. 847.) In the present case, the two defendant banks did not commit any acts which can be deemed as the basis for the exercise of *in personam* jurisdiction by the Illinois courts.

For the reasons stated, the order of the circuit court of Cook County denying the motions to quash service of summons on First Los Angeles Bank and the Federal Reserve Bank of San Francisco is reversed.

Order reversed.

JIGANTI, P. J., and SIMON, J., concur.