**In re OIL SPILL BY the AMOCO CAD-IZ OFF the COAST OF FRANCE ON MARCH 16, 1978.**

In the Matter of the COMPLAINT of AMOCO TRANSPORT COMPANY, Standard Oil Company (Indiana), Amoco International Oil Company, and Claude Phillips for Exoneration from or Limitation of Liability.

MDL No. 376, No. 78C3693.

United States District Court,
N. D. Illinois, E. D.

Dec. 26, 1979.

See also, 491 F.Supp. 161.

Frank Cicero, Jr., Samuel A. Haubold, Sydney Bosworth McDole, James A. Goold, Lawrence E. Strickling, Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Edward S. Silber, Ward A. Meythaler, Robert E. Arroyo, Keck, Mahin & Cate, Chicago, Ill., Joseph Keig, Jr., Robert T. Palmer, McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

In each of several of the cases consolidated in this multidistrict proceeding, Astilleros Espanoles, S. A. ("Astilleros") has filed a motion to dismiss. Issues relative to the motions have been briefed by counsel in the context of the case first filed in this court, the limitation proceeding on behalf of Amoco Transport Company ("Transport"). This decision, therefore, relates only to the limitation action, though its reasoning may have broader application.

In that proceeding, the limitation plaintiff filed a third-party complaint against Astilleros, based upon the allegedly negligent manufacture of the M/V Amoco Cadiz, whose grounding and subsequent loss of cargo allegedly caused the damage upon which the parties base their claims.

In the motion to dismiss, Astilleros raises several arguments: 1) the court lacks personal jurisdiction over Astilleros; 2) the court lacks subject matter jurisdiction over the third-party complaint; and 3) the third-party complaint should be dismissed on the theory of *forum non conveniens.* The court will address these arguments *seriatim.*

### I.

Because of the nature of several of the arguments raised, a brief recitation of certain pertinent facts would be helpful. Astilleros is a Spanish corporation in the business of ship construction and repair. Its principal corporate office and its five shipyards are located in Spain.

In 1970, Astilleros and Amoco Tankers Company conducted negotiations for the manufacture by the former and purchase by the latter of the Amoco Cadiz. These negotiations took place in Chicago and in Spain. In July, 1979, four representatives of Astilleros came to Chicago to meet with representatives of Amoco. A subject of the negotiations concerned "the technical plans and specifications for the ship." (Memorandum in Opposition, Wren Affidavit, ¶ 4.) On the other hand, Astilleros maintains that "[n]o part of the design, manufacture, or installation of her steering gear took place in Illinois." (Martinez Affidavit filed July 23, 1979, ¶ 7.) Rather, the steering gear system was designed and manufactured in Spain and Germany. (Martinez

Affidavit ¶ 8.) The contract for the construction of ship was executed in Chicago on July 31, 1970.

Subsequent to the execution of the contract, several representatives of Astilleros met with representatives of Amoco International Oil Company on at least two occasions in Chicago to discuss a variety of technical details for the Amoco Cadiz. (Wren Affidavit ¶¶ 5, 6.)

In May, 1974, Astilleros delivered the Amoco Cadiz to Amoco Tankers Company, which ultimately sold the tanker to Transport.

## II.

Astilleros maintains that this court lacks personal jurisdiction over it. Rule 4(e), Fed.R.Civ.P., provides that service of summons on one not an inhabitant of or found within the state in which the federal district court sits may be made under the circumstances provided in and in the manner prescribed by a statute or rule of that state. In Illinois, the applicable statute is the statute popularly referred to as the "long-arm" statute, Ill.Rev.Stat. Ch. 110, §§ 16, 17 (1977).

Section 17 provides in pertinent part:
(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

    \*     \*     \*     \*     \*     \*

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section. Ill.Rev.Stat. Ch. 110, § 17 (1977).

The intent of this statute is to assert jurisdiction over nonresidents to the fullest permissible extent under the due process clause. *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957); *Poindexter v. Willis*, 87 Ill.App.2d 213, 231 N.E.2d 1 (5th Dist. 1967); *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481 (7th Cir. 1968). The due process clause requires as a condition precedent to the exercise of jurisdiction over the person of a nonresident that the person have such "minimum contacts" with the forum state that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Whether there exist such minimum contacts so as to comport with the due process clause cannot be determined by a set formula or "rule of thumb," but must be determined from the particular facts of each case. *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Braband v. Beech Aircraft Corp.*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978). The test is a flexible one which emphasizes the reasonableness of subjecting a defendant to suit in a foreign jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 203–04, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *First National Bank of Chicago v. Screen Gems, Inc.*, 40 Ill.App.3d 427, 352 N.E.2d 285 (1st Dist. 1976); *Sears Bank and Trust Co. v. Luckman*, 61 Ill.App.3d 260, 18 Ill.Dec. 520, 377 N.E.2d 1156 (1st Dist. 1978). There must be some conduct by virtue of which the defendant may be said to be transacting business within the forum state, thereby invoking the benefits and protection of its laws. *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239. Thus, it is the nature and quality of the defendant's conduct which must be examined in determining whether *in personam*

jurisdiction exists. *International Shoe Co. v. Washington, supra* 326 U.S. at 319, 66 S.Ct. at 160; *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975).

As a further limitation on the exercise of "long-arm" jurisdiction, subsection (3) of § 17 provides that only causes of action which arise from the jurisdictional conduct may be asserted against the defendant. The purpose of this provision is to ensure that a close relationship exists between the jurisdictional activity and the cause of action which the defendant must defend. *See* Ill.Ann.Stat. Ch. 110 § 17 (Smith-Hurd), Historical and Practice Notes. This requirement has been interpreted as mandating only that the plaintiff's cause of action "be one which lies in the wake of the commercial activities by which the defendants submitted to the jurisdiction of Illinois courts." *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646, 651 (1st Dist. 1966).

The parties disagree as to whether this court can find that the transaction of business in this state was the jurisdictional act by Astilleros. Astilleros contends that because Transport's claim sounds in tort, this court's inquiry must be limited to whether a tortious act was committed in Illinois. This contention is based upon its belief that "[t]he business allegedly transacted by Astilleros [in Illinois], the partial negotiation and execution of a contract, does not establish the relationship with Illinois necessary to sustain a cause of action based on tort." (Reply Memorandum of Astilleros at p. 5.)

The statute itself belies this narrow interpretation. Subsection (1) of § 17 states that a person submits himself "to the jurisdiction of the courts of this State as to *any* cause of action arising from the doing of any" jurisdictional act. Ill.Rev.Stat. Ch. 110, § 17(1) (1977) (emphasis added). Subsection (3) permits causes of action arising from the jurisdictional acts to be asserted against the defendant. The statute does not foreclose suit in tort upon acts which constitute the transaction of business. The tort must simply "lie in the wake of such commercial activity."

Case law fully supports this proposition. *See People ex rel. Scott v. Police Hall of Fame*, 60 Ill.App.3d 331, 17 Ill.Dec. 519, 376 N.E.2d 665 (1st Dist. 1978) (where the case was based on the tort of common law fraud, yet the jurisdictional act was the transaction of business); *Technical Publishing Co. v. Technology Publishing Corp.*, 339 F.Supp. 225 (N.D.Ill.1972) (where the case was based on the tort of unfair competition but the court's analysis focused primarily upon the defendant's transactions of business in this state, although the court also found the commission of a tortious act in this state); *Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395 (7th Cir. 1965) (where plaintiff sued in tort but the court analyzed the jurisdictional question in terms of both the transaction of business *and* the commission of a tortious act); *Insull v. New York World-Telegram Corp.*, 172 F.Supp. 615 (N.D.Ill.1959) (where the case was for defamation but the court found both the transaction of business and the commission of a tortious act); *Dalton v. Blanford*, 67 Ill. App.3d 91, 23 Ill.Dec. 39, 383 N.E.2d 806 (5th Dist. 1978) (where the complaint alleged a product liability claim and the court asserted *in personam* jurisdiction based upon the transaction of business).

In *Lindley v. St. Louis-San Francisco Railway Co.*, 407 F.2d 639 (7th Cir. 1968), a tort action, the court stated: "Under . . [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)], and Sec. 16 and Sec. 17 of the Illinois Civil Practice Act, a solitary business transaction or tort justifies *in personam* jurisdiction *if the action arises from either.*" 407 F.2d at 641 (emphasis in original).

Thus, if this court finds that the negotiations which took place in Chicago concerning the technical specifications, manufacture and operation of the Amoco Cadiz constitute the "transaction of any business" and that the tort sued upon (negligent design, manufacture and construction of the ship or its steering system) lies in the wake of the commercial activity occurring in this

state, then Astilleros has submitted to the jurisdiction of the court which, therefore, can assert *in personam* jurisdiction over it, if such assertion would not offend traditional notions of fair play and substantial justice.

The court concludes that it does have jurisdiction over the person of Astilleros.

The third-party complaint states a cause of action for indemnification and contribution pursuant to Rule 14(a), Fed.R.Civ.P., and a cause of action pursuant to Rule 14(c), Fed.R.Civ.P., which would cause third-party defendant to be primarily liable to claimants suing Transport. The cause of action sounds in tort for alleged negligence in the design and manufacture of the steering and other vital systems of the Amoco Cadiz.

As shown in Part I of this memorandum, numerous discussions were held in Chicago concerning plans, specifications and technical aspects of the Amoco Cadiz. (As the statute reads and case law holds, only those negotiations which dealt with the Amoco Cadiz, and not its sister ships, are relevant in the determination of the existence of minimum contacts.) Moreover, Astilleros's attempt to direct or to limit this court's analysis to the design and manufacture of the steering gear alone must fail. The third-party complaint alleges negligence in the design and manufacture of other vital systems in addition to the steering mechanism. In addition, the court has been unable to find and Astilleros has not directed the court's attention to authority for the proposition that in a products liability case, when determining the existence of minimum contacts, the origin of component parts of the product must be examined, and only those component parts designed, manufactured or the subject of negotiation within the state may be the subject of the tort claim.

By voluntarily conducting negotiations in Illinois concerning the design and manufacture of the Amoco Cadiz, Astilleros conducted activities within the state, thereby invoking the benefits and protection of its laws. The nature and quality of its acts constitute the transaction of business out of which Transport's cause of action arose. The claim of alleged negligent design and manufacture of the tanker "lies in the wake" of the negotiations which took place in Chicago.

The mere fact that the negotiations dealt with matters ultimately framed into a contract does not insulate Astilleros from a tort claim relating to the product which was the subject of the contract. The type of activity conducted in Chicago satisfies the jurisdictional predicate of the transaction of business within this state such that the assertion of personal jurisdiction over Astilleros does not offend traditional notions of fair play and substantial justice.

### III.

Astilleros next argues that this court lacks subject matter jurisdiction in admiralty over the third-party complaint. It contends that the tort of negligent design and manufacture of the tanker is not sufficiently related to traditional maritime activity so as to be within the court's admiralty jurisdiction. This argument relies primarily on several recent decisions in which courts have seemingly delimited admiralty jurisdiction over certain tort claims. Astilleros states that, "[i]n *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court completely changed the basis for determining admiralty jurisdiction in tort cases." (Memorandum in Support at p. 6.) This contention misstates the reasoning and holding of the Court. After reviewing prior decisions, the Court stated the general rule that if the tort occurred on navigable water, admiralty jurisdiction existed. This "locality test" worked satisfactorily for most traditional maritime torts involving a waterborne vessel; a simple test applied in simple cases. The court recognized, however, "that this Court has never explicitly held that a maritime locality is the sole test of admiralty jurisdiction." 409 U.S. at 258, 93 S.Ct. at 497. Moreover,

. . . there has existed over the years a judicial, legislative, and scholarly recog-

nition that, in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test. 409 U.S. at 261, 93 S.Ct. at 501.

In addition, the very narrow scope of the Court's holding refutes its interpretation as "completely chang[ing] the basis for determining admiralty jurisdiction in tort cases." (Memorandum in Support at p. 16.) "We hold that unless . . . [a significant relationship to traditional maritime activity] exists, claims *arising from airplane accidents* are not cognizable in admiralty in the absence of legislation to the contrary." 409 U.S. at 268, 93 S.Ct. at 504 (emphasis added).

In *Executive Jet*, a jet aircraft struck a flock of seagulls upon take-off, lost power, crashed and sank in navigable waters of Lake Erie. The issue before the Court was whether a suit based on negligence for property damage to the aircraft lay within federal admiralty jurisdiction. In addressing the jurisdictional issue, the Court stated:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels religated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. 409 U.S. at 269–70, 93 S.Ct. at 505.

Thus, through experience, courts sitting in admiralty are well equipped to hear matters such as "maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." 409 U.S. at 270, 93 S.Ct. at 505. However, "[r]ules and concepts such as these are wholly alien to air commerce, whose vehicles operate in a totally different element, unhindered by geographical boundaries and exempt from the naviga-

tional rules of the maritime road." 409 U.S. at 270, 93 S.Ct. at 505.

It is in this context that the court emphasized its previously-expressed requirement that there exist a significant relationship to traditional maritime activity to trigger the federal court's peculiar expertise in admiralty cases.

As the quoted holding of the Executive Jet case demonstrates, its impact on the law of admiralty is limited to aviation cases. As opposed to the *Executive Jet* situation, the fact that the tragedy of the Amoco Cadiz occurred in navigable water is not inconsequential. Had this not been so, perhaps the argument based on *Executive Jet* would be more persuasive.

Another application of the requirement that the tort bear a significant relationship to traditional maritime activity is found in *Chapman v. United States*, 575 F.2d 147 (7th Cir. 1978) (*en banc*).

> [The issue was] whether the federal admiralty jurisdiction extends to tort claims involving the operation of small pleasure boats over waters that, although navigable and used for commercial transportation in the past, are now used and likely to be used only for recreational activities. We hold that admiralty jurisdiction does not exist under these circumstances. 575 F.2d at 147.

The court correctly stated that the holding in *Executive Jet* was confined to aviation torts but commented that its reasoning was instructive. Thus, the court did not adopt a mechanical application of the locality test but instead analyzed the jurisdictional problem in terms of the claim's relationship to traditional maritime activity. The court concluded that a pleasure boat accident which occurred in waters used exclusively for recreational activities bore no significant relationship to maritime activity, that is, to navigation and commerce. 575 F.2d at 151.

In the instant case, the accident occurred at sea in heavily-travelled international shipping lanes, undeniably involving commercial maritime activity in navigable waters.

Other cases cited by Astilleros are similarly inapposite. *E. g., Jorsch v. LeBeau,* 449 F.Supp. 485 (N.D.Ill.1978) (involving and injury to a water skier); *McGuire v. City of New York,* 192 F.Supp. 866 (S.D.N.Y.1961) (involving an injury to a bather at a public beach).

The finding, in this case, of events which bear a significant relationship to traditional maritime activity is not defeated by the fact that admiralty jurisdiction does not extend to shipbuilding contracts. The third-party complaint does not state a contract claim. It is for negligent design and manufacture which negligence allegedly was the proximate cause of the maritime accident. Courts have long held that suits for the negligent design, manufacture or assembly of a vessel involved in a maritime accident are cognizable in admiralty. *E. g., McKee v. Brunswick Corp.,* 354 F.2d 577 (7th Cir. 1965) (which also involved long-arm jurisdictional issues); *Watz v. Zapata Off-Shore Co.,* 431 F.2d 100 (5th Cir. 1970); *Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp.,* 519 F.2d 171 (5th Cir. 1975); *Schaeffer v. Michigan-Ohio Navigation Co.,* 416 F.2d 217 (6th Cir. 1969); *Taisho Fire & Marine v. Vessel Montana,* 335 F.Supp. 1238 (N.D.Cal.1971).

The cases which Astilleros cites simply do not support its position. *Hollister v. Luke Construction Co.,* 517 F.2d 920 (5th Cir. 1975) (which did not involve a vessel in navigation); *Alfred v. M/V Margaret Lykes,* 398 F.2d 684 (5th Cir. 1968) (which involved a vessel which was neither completed nor commissioned); *Frankel v. Bethlehem-Fairfield Shipyard,* 132 F.2d 634 (4th Cir. 1942) (which involved a vessel not completed). Thus, cases which hold that a suit based on a shipbuilding *contract* is not a suit in admiralty shed no light on the issue of whether this court has jurisdiction in admiralty over the *tort* claims of Transport.

■ Therefore, this court finds that the claim for negligent design and manufacture. of the Amoco Cadiz, which was involved in a maritime accident while engaged in commerce, is sufficiently related to traditional maritime activity so as to be within the purview of federal admiralty jurisdiction.

## IV.

Finally, Astilleros requests that this court exercise its discretion to dismiss the third-party complaint on the theory of *forum non conveniens.*

The leading federal decision on *forum non conveniens* is *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." 330 U.S. at 507, 67 S.Ct. at 842. Many factors to be analyzed were enumerated by the Court.

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. [footnote omitted.] But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. 330 U.S. at 508, 67 S.Ct. at 843.

■ Dismissal on the basis of this principle requires that there in fact be a significantly more convenient alternative forum in which the lawsuit may be maintained.

Such alternative forum must be able to assert jurisdiction over all parties and to award complete relief. *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *see* 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure, § 3828 (1976 ed.). Finally, the burden on the defendant moving to dismiss in favor of a court of a foreign country is very strong, although somewhat diminished in this case, where plaintiff is a foreign corporation. The alien status of Transport, however, seems balanced by the fact that its limitation action is not in actuality the affirmative assertion of a cause of action against others but a defensive action in response to several actions filed against it in the courts of this country.

It is against this background and within this framework that Astilleros must show that dismissal is both proper and just.

Astilleros, focusing solely on inconveniences which it may face and emphasizing its own private interest, would have this court ignore the private interest of Transport. As stated above, Transport did not voluntarily seek to litigate the issues raised by the grounding of the Amoco Cadiz. Rather, it is in this country seeking to limit its liability to foreign claimants who themselves, for reasons strategic or otherwise, chose to litigate in the United States issues whose resolution might have been sought somewhere in Europe. Suffice it to say that this statutorily-authorized limitation proceeding could not have been brought in a foreign jurisdiction. The private interest of Transport, a foreign corporation, demands that the limitation action proceed and that all issues relevant thereto be litigated in one forum.

Another relevant consideration is the relative ease of access to the sources of proof. The sources of proof will be found in Chicago (the substance of negotiations conducted there), Spain (where the tanker was manufactured), Germany (where the steering mechanism was subcontracted), and France (where the accident and damage occurred and the wrecked vessel is stored). It appears, therefore, that there exists no single jurisdiction which would afford such increased relative access to the sources of proof that this factor be deemed determinative.

As to the availability of compulsory process, it appears that given the multinational nature of the issues and parties in interest, no single country could afford compulsory process as to all parties. Focusing on the third-party complaint, Astilleros has not shown that it could obtain compulsory process over the German subcontractor or any other foreign party it may wish to call as witness or to bring in as a party.

The cost of obtaining attendance of willing witnesses in this country would, of course, be somewhat greater than in any European nation.

The possibility of viewing the premises is available only in France, not Spain. However, this factor bears little weight with respect to considerations dealing with the third-party complaint.

It is arguable that litigation of the issues presented by the oil spill presents numerous practical administrative problems which make trial of the cases difficult, inexpeditious and expensive. However, given the fact that the motion to dismiss is addressed only to the third-party complaint in Transport's limitation action, these factors are not as persuasive as they might have been if addressed to all consolidated cases. It is a fact, however, that even dealing with the third-party complaint exclusively, numerous practical inconveniences exist. However, weighing the inconvenience of retaining jurisdiction against dismissal of only the third-party complaint, the scales tip in favor of retention.

The factor of enforceability of any judgment ultimately rendered bears little weight given the numerous parties and nations involved.

It does not appear that Transport has brought its third-party complaint against Astilleros to "vex, harass or oppress" it. Rather, Transport attempts to consolidate in one forum all of the issues which are

relevant to the just and total resolution of its right to limitation and the extent of its liability. Again, Transport is not litigating in the courts of this country voluntarily but brings this limitation action as a defense to suits brought against it in this country.

For all of these reasons, this court finds that the third-party complaint should not, in the interest of justice and on the basis of the principle of *forum non conveniens*, be dismissed.

### V.

In conclusion, this court finds that it can assert jurisdiction over the person of third-party defendant Astilleros Espanoles, S.A., that it has subject matter jurisdiction in admiralty over the claims asserted in the third-party complaint, and that the third-party complaint should not be dismissed on the principle of *forum non conveniens*. For these reasons, the motion of Astilleros Espanoles, S.A., to dismiss the third-party complaint is denied.