**DOCTORS HOSPITAL, INC., et al.,
Plaintiffs-Appellants,**

v.

**Luis SILVA RECIO, Secretary of Labor
of the Commonwealth of Puerto Rico,
Defendant-Appellee.**

**No. 76–1119.**

United States Court of Appeals,
First Circuit.

Argued Feb. 9, 1977.

Decided June 21, 1977.

Eduardo Negron Rodriguez, San Juan, P. R., with whom Fiddler, Gonzalez & Rodriguez, San Juan, P. R., was on brief for appellants.

**620**

Maggie Correa Aviles, Asst. Sol. Gen., Dept. of Justice, with whom Roberto Armstrong, Jr., Acting Sol. Gen., San Juan, P. R., was on brief for appellee.

Before COFFIN, Chief Judge, and VAN OOSTERHOUT,* and INGRAHAM,** Circuit Judges.

INGRAHAM, Circuit Judge.

Plaintiffs-appellants are private hospitals in Puerto Rico. The Secretary of Labor for the Commonwealth, defendant-appellee in this case, notified appellants that under Mandatory Decree No. 4 of the Minimum Wage Board of Puerto Rico they were liable for back wages on work performed by their employees from 1967 to 1974. The hospitals sued for declaratory and injunctive relief in the United States District Court, alleging, *inter alia,* that the Fair Labor Standards Act[1] preempted Mandatory Decree No. 4. The district court found that the decree was not preempted with respect to the hospital employees. It certified the issue to this court under F.R.Civ.P. 54(b). We affirm.

In 1951 the Minimum Wage Board of Puerto Rico approved an amended version of Mandatory Decree No. 4. It provided in pertinent part:

> Article V—Guarantee of Minimum Weekly Compensation
>
> A—Every employee, who after having worked fifteen days for an employer, works thirty hours or more a week, but less than forty-eight hours even though he is available for work, shall be entitled except in cases of acts of God, to a weekly wage not lower than that found by multiplying the rate per hour he is receiving by forty-four. . . .
>
> B—For the purposes of this article, it shall be considered that the employee is not available for work, only when he does not appear in person to work, refuses to work, or is so ill he is unable to perform his habitual tasks.

> Article VII—Maximum Working Periods
>
> No employer shall employ any worker in the hospital, clinic, or sanitarium service for more than eight hours in any period of twenty-four consecutive hours; nor for more than forty-eight hours in any week unless he pays said worker for work done in excess of said eight hours or forty-eight hours at a rate of at least twice the wage rate he is then receiving.

Under Article V, once a worker was employed for at least thirty hours a week, he was entitled to pay for forty-four hours. The decree was not inconsistent with Act No. 379 of May 15, 1948,[2] which provided for a forty-eight hour work week with double overtime for industries not covered by the Fair Labor Standards Act and a forty hour work week with time and a half overtime for industries covered by the federal legislation.

In 1966 the Fair Labor Standards Act was amended to bring hospital employees within its protection. P.L. 89–601, Sept. 23, 1966, 80 Stat. 830, 831. The extension was phased in gradually:

> (2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this Act by the Fair Labor Standards Amendments of 1966—
>
> (A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,
>
> (B) for a workweek longer than forty-two hours during the second year from such date, or
>
> (C) for a workweek longer than forty ty hours after the expiration of the second year from such date,

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

**1.** 29 U.S.C. §§ 201–219, 557.

**2.** 29 L.P.R.A. §§ 271–279.

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(2) (Supp.1977).

From 1967 to 1974 the hospitals compensated their employees on the basis of an hourly wage. Employees worked thirty-seven and one-half hours a week but were paid for forty regular hours of work.

By its passage of Act No. 223 of July 23, 1974, the Commonwealth Legislature amended Mandatory Decree No. 4. The maximum work week shrunk to forty hours and the wage multiplier to forty. The amendments were not retroactive. The Secretary of Labor determined that under the pre-1974 Article V of the Mandatory Decree, the employees were entitled to an additional four hours' pay for each week of labor. The Secretary assessed deficiencies of $92,362.16 against Doctors Hospital, Inc.; $73,724.99 against Hospital Sagrado Corazon, Inc.; and $26,390.18 plus a 100% penalty against Hospital Hermanos Melendez, Inc. The hospitals instituted separate suits against the Secretary, which were consolidated under F.R.Civ.P. 42(a). Only Doctors Hospital and Hospital Sagrado Corazon have appealed from the adverse judgment on the preemption issue.

Read in its entirety, Mandatory Decree No. 4 prior to its amendment allowed an employer to obtain up to forty-eight hours of work from an employee for regular hourly wages. The decree required the employee to pay wages for forty-four hours so long as the employee was available for at least thirty hours. The automatic wage multiplier inevitably encouraged, but it did not require, employers to hire persons for at least forty-four hours per week. Under the Mandatory Decree, an employer could hire persons for only thirty-seven and one-half hours a week so long as he paid them for forty-four hours. With the work week reduced by the Fair Labor Standards Act to forty hours, hospital employers could no longer require the same amount of work for forty-four hours' pay.

For given hours of work in a single week, different wage minima are established by the federal Act and the Mandatory Decree. The former requires time and a half for all hours in excess of forty. The latter requires forty-four hours' pay up to forty-four hours of work, straight time up to forty-eight hours, and double wages for hours in excess of forty-eight. Simple arithmetic reveals that persons working less than forty-two and two-thirds hours or more than fifty-six hours would benefit more from the Mandatory Decree. Persons working over forty-two and two-thirds hours but less than fifty-six hours would benefit more from the Fair Labor Standards Act. In the case presented to us, wages would be higher under the Mandatory Decree, since an employee working thirty-seven and one-half hours would earn forty-four hours' worth of wages. Appellants contend that Articles V and VII must be read together: since the Fair Labor Standards Act prohibited the employer from demanding forty-four hours of work at regular wages, the Commonwealth could not demand that the employer pay forty-four hours of wages for less work. This argument is attractive as a general statement of fairness, but it does not ineluctably require preemption.

The Supreme Court has provided explicit guidance in its preemption decisions. In *Jones v. Rath Packing Co.*, 519 U.S. 430, 97 S.Ct. 1305, 51 L.Ed.2d 604 [1977], the Court outlined the procedure for a preemption inquiry. Assuming that the state is not constitutionally precluded from regulation in the field,[3] the court must first determine whether Congress has prohibited state regulation of the particular aspects of commerce. The prohibition need not be explicit in the wording of the Act, but must be "clear and manifest." *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S.

**3.** As in *Jones,* no claim is made that the Constitution prohibits states or the Commonwealth from regulating wages and hours. We doubt that any such claim could be made. *See DeCanas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).

624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), *quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); *accord, Jones v. Rath Packing Co., supra,* 430 U.S. at 525, 97 S.Ct. 1305. Assuming the state regulation negotiates this hurdle, the court must determine whether, "under the circumstances of this particular case," the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *accord, Jones v. Rath Packing Co., supra,* 430 U.S. at 526, 97 S.Ct. 1305. Of course, if it is impossible to comply simultaneously with the state and the federal statutes, the state statute must yield. *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). However, even if dual compliance is possible, it is still conceivable that the state statute will be found to impair the operation of the federal statute. *Cf. Jones v. Rath Packing Co., supra.*

In *Jones* the Court considered challenges to § 12211 of the California Business and Professions Code, as implemented by Article 5 of that state's Administrative Code. Section 12211 regulated labeling of commodities. The Court held that the Wholesome Meat Act, 21 U.S.C. §§ 601–695, preempted the state regulation of meat labeling because the federal statute specifically prohibits "different" informational requirements. 21 U.S.C. § 678; *Jones, supra,* 430 U.S. at 532, 97 S.Ct. 1305. The Court also held that the Federal Food, Drug and Cosmetic Act, 21 U.S.C. c. 9, and the Fair Packaging and Labeling Act, 15 U.S.C. §§ 1451–61, preempted the state regulation of flour because California law did not allow for weight differences caused by moisture. Although the state law did not render federal compliance impossible, the omission would hinder the federal purpose of facilitating value comparisons by consumers. In the course of reaching its decision regarding flour, the Court noted that the failure of the federal Acts to prohibit different requirements precluded preemption on that basis. Instead, preemption of flour

labeling was based upon frustration of Congressional purpose. *See Kargman v. Sullivan,* 1 Cir., 552 F.2d 2, at 6 *on petition for rehearing,* (1st Cir. 1977).

■ Utilizing the procedure outlined in *Jones,* we find that the Mandatory Decree was not preempted between 1967 and 1974. First, the Fair Labor Standards Act does not by its own terms prohibit state legislation in the field of wages and working conditions. To the contrary, it specifically contemplates state regulation:

> (a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

29 U.S.C. § 218(a).

We next look to the operation of the federal statute and the state regulation to ascertain whether conflict exists. It is possible to comply with the Mandatory Decree without triggering federal enforcement action. A hospital may under both the Fair Labor Standards Act and the Mandatory Decree hire an individual to work a thirty-seven and one-half hour workweek. The Mandatory Decree which requires forty-four hours' pay for that work, is well within the requirements of 29 U.S.C. § 207. Assuming a wage rate of $1, the employer must pay the employee $44 under the Man-

datory Decree. Under the Fair Labor Standards Act he need pay only $37.50. Section 218 contemplates that possibility.

Further, an investigation into the congressional purpose reveals that the Mandatory Decree does not operate to frustrate or impair federal objectives. The Fair Labor Standards Act was designed to protect employees from excessive hours and substandard wages, "which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). The 1966 amendments extended coverage to approximately 7.2 million additional employees, of whom 1,471,000 were employees of hospitals and related institutions. S.Rep.No.1487, 89th Cong., 2d Session (1966), reprinted in U.S. Code Cong. & Adm.News, 89th Cong.2d Session 3002, 3003. The Senate Labor and Public Welfare Committee characterized the amendments as "an important contribution to the Nation's war on poverty," noting that many of the poor were full time employees not protected by the Fair Labor Standards Act. *Id.* at 3004. The Mandatory Decree was also designed to protect workers from exploitation. The Supreme Court of Puerto Rico construed a similar decree as having the purpose of helping workers to meet the bare necessities of life. That decree was held to be a minimum guaranteed wage rather than a determination of the value of services performed by employees. *Hilton Hotels International v. Minimum Wage Board of Puerto Rico,* 74 P.R.R. 628, 667–68 (1953). Admittedly, parallel statements of purpose do not necessarily create harmony of operation, much less save a challenged statute. *Florida Lime & Avocado Growers v. Paul, supra,* 373 U.S. at 142, 83 S.Ct. 1210. But the *effect* of the Mandatory Decree with respect to workers employed for thirty-seven and one-half hours is not an obstacle to the accomplishment of congressional goals. Indeed, it provides more benefits for those workers than does the Fair Labor Standards Act.

The hospital manager may be aghast at the prospect of paying Mandatory Decree wages for some workers and Fair Labor Standards Act wages for other workers, but so long as the decree requires higher pay than does the federal statute, conflict does not materialize. The hospitals cannot complain that the Fair Labor Standards Act preempts the Mandatory Decree for employees working between forty-two and two-thirds hours and fifty-six hours. That is not the issue here. Nor is it suggested that the decree, which as of mid-1977 conforms with federal law, will or can be applied retroactively in such a way as to create a conflict. We consider only the situation of workers who labor for thirty-seven and one-half hours per week. That a statute is preempted in part does not dictate that it is wholly preempted. *Cf. Jones v. Rath Packing Co., supra.*

Appellants take a similar approach in attacking Article V by reading it in conjunction with Article VII. Because Article VII is clearly proscribed insofar as it allows regular wages for hours in excess of forty, appellants reason that the automatic multiplier found in Article V is also invalid. Puerto Rican law may dictate that if part of the decree is preempted, the remaining part should not be enforced. The Mandatory Decree may be inconsistent with another Puerto Rican statute. But these are irrelevant to the Supremacy Clause. Actually, appellants are contending that the purposes of the Mandatory Decree will be frustrated if the Commonwealth attempts to enforce it in truncated form. The district court may eventually accept this argument. However, it furnishes no rationale for preemption.

Finally, appellants contend that the 1974 amendments to Mandatory Decree No. 4 constituted legislative recognition that the decree conflicted with federal law. *Cf. Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), *aff'g* 64 Cal.2d 529, 877, 50 Cal.Rptr. 881, 903, 413 P.2d 825, 847 (1966). However, the legislative declaration made at the time of the amendment does not flatly state that the decree conflicts with federal law. If in fact the Legislature recognized a conflict, it took a curi-

ously lackadaisical approach to the problem. Under the 1974 amendments to the Mandatory Decree, the work week was reduced gradually, reaching forty hours in mid-1977 (ten years after the Fair Labor Standards Act was extended to hospital employees). Nor does the legislative declaration address the specific situation of workers employed forty hours or less but paid for forty-four hours. Essentially, the 1974 changes in the Mandatory Decree constituted a determination that forty-four hours' pay was no longer necessary for a minimum standard of living. This determination does not furnish grounds for preemption.

The decision is AFFIRMED.