**COLONIAL CADILLAC, INC., Plaintiff,**

v.

**SHAWMUT MERCHANTS BANK, N.A., et al., Defendants.**

**Civ. A. No. 79–389–G.**

United States District Court, D. Massachusetts.

March 26, 1980.

---

**7.** Since the third-party action herein is one for indemnity, the Court dismisses it as well.

Oliver I. Ireland, Federal Reserve Bank of Boston, Boston, Mass., for Federal Reserve Bank.

Gaston, Snow & Ely Bartlett, Boston, Mass., for Shawmut Merchants Bank.

T. McLean Griffin, Gen. Counsel, Boston, Mass., for First Nat. Bank.

Richard M. Gelb, Boston, Mass., for American Underwriting.

Frederick S. Gilman, Parker, Coulter, Daley & White, Boston, Mass., for Colonial Cadillac, Inc.

## MEMORANDUM AND ORDER

GARRITY, District Judge.

This case involves the liability of a Federal Reserve bank to a remote, i. e., non-sending, party for an item handled in the collection process. The plaintiff, Colonial Cadillac, Inc. ("Colonial"), alleges that the Federal Reserve Bank of Boston ("FRB") breached its duty to exercise ordinary care in the handling of drafts for collection and engaged in unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Colonial commenced this suit in the Superior Court of Essex County, Massachusetts. The FRB removed the case to federal court and filed a motion to dismiss for failure to state a claim upon which relief could be granted. The parties have filed extensive memoranda, before and after oral argument. For the reasons discussed below, we grant the defendant FRB's motion to dismiss.

Colonial's claim is based on a series of transactions which occurred in early 1976. On or about February 3, 1976 Colonial sold a 1975 Cadillac Fleetwood to Gerald Malloy ("Malloy") for $7,400. Malloy paid for the car with a draft for $7,300 which was issued by American Underwriting Corp. ("American"), made payable to Colonial Cadillac, and dated February 3, 1976, and a check in the amount of $100. Malloy left Colonial with the title to the automobile, which was made out to Vincent Motor Sales, and with the car. On February 4, 1976 Colonial deposited the two items in its account at the Shawmut Merchants Bank, N.A. ("Shawmut").[1] The $7,300 item, at issue in this case, then proceeded through the following collection process: the Shawmut, on or about February 9, 1976, presented the item for collection to the FRB; the FRB, on or about February 11, 1976, presented the draft for collection to the First National Bank of Boston ("FNB"); finally, the FNB, on or about February 12, 1976, presented the draft for payment to American, the payor, and American refused to pay. Colonial, however, did not receive notice of American's dishonor until April 26, 1976, when the Shawmut debited Colonial's account in the amount of the item. American apparently had not honored the item because it had never received title to the vehicle. Upon learning of American's dishonor, Colonial contacted Malloy and found that he had obtained title to the car involved and subsequently had traded the automobile for another vehicle. Although Malloy said he would repay the money, he never did. Colonial claims that one of the parties in the collection process is liable to Colonial for failing to give timely notice of American's dishonor. The FRB now seeks to have this suit dismissed as to them, on the ground that they are not liable to Colonial for the handling of the draft under applicable federal regulations, here Regulation J, 12 C.F.R. § 210. We agree.

■ Regulation J was promulgated, in part, to define more precisely "the terms and conditions under which the Reserve banks receive and handle for collection cash and non cash items." 32 C.F.R. 6210. Sec-

tion 210.6(a) of Volume 12 of the Code of Federal Regulations deals specifically with the status and warranties of Federal Reserve Banks and states in relevant part:

A Federal Reserve bank will act only as the agent of the sender in respect of each cash item or non cash item received by it from the sender . . . . A Federal Reserve bank will not act as the agent or the subagent of any owner or holder of any such item other than the sender. A Federal Reserve bank shall not have, nor will it assume, any liability to the sender in respect of any such item and its proceeds except for its own lack of good faith or failure to exercise ordinary care. (Footnotes omitted.)

Since liability flows from a bank's agency status, Section 210.6 in effect limits a Federal Reserve bank's liability to those who "send" items to the Reserve banks. Section 210.2(e) defines a "sender" as "a member bank, a nonmember clearing bank, a Federal Reserve bank, an international organization, or a foreign correspondent." Thus, the application of Regulation J to this case would limit the FRB's potential liability to the Shawmut, the sender, and would preclude liability to remote parties, such as Colonial.

The Uniform Commercial Code ("UCC"), however, also applies to the bank collection process and the UCC establishes the standard of care collecting banks are to use when handling various items. First, under the UCC, "Unless a contrary intent clearly appears . . . the bank is an agent or subagent of the owner of the item . . ." M.G.L. c. 106 § 4–201(1); and secondly:

A collecting bank must use ordinary care in (a) presenting an item or sending it for presentment; and (b) sending notice of dishonor or nonpayment or returning an item other then a documentary draft to the bank's transferor . . . after learning that the item has not been paid or accepted, as the case may be . . .

M.G.L. c. 106 § 4–202(1). Thus, the application of the UCC to this case would expose the FRB to liability to remote parties, such as Colonial, as well as immediate parties, if the bank failed to use ordinary care in the collection process.

The FRB bases its motion to dismiss on the conflict of federal and state law in this case and argues that since it is impossible to comply with both, federal law, here 12 C.F.R. § 210.6, preempts the relevant portions of the UCC. The preemption inquiry, set forth in *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) and applied in *Doctors Hospital, Inc. v. Silva Recio*, 1 Cir. 1977, 558 F.2d 619, essentially involves a three part analysis. First, the court must determine whether the Constitution precludes the state from regulation in the given field. If neither party claims that the Constitution alone denies the state the power to act, the court may presume it does not. *Jones v. Rath, supra* at 525, 97 S.Ct. at 1309. Second, the court must determine whether Congress "clearly and manifestly" has precluded state regulation of the particular aspects of commerce in the given case. *Jones v. Rath, supra* at 525, 97 S.Ct. at 1309; *Doctors Hospital, supra* at 621. Finally, a congressional enactment, while not excluding state activity in the field, may override state law if the laws conflict. Here the court's task is "to determine whether, under the circumstances of this particular case, [the state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), in *Jones v. Rath, supra* 430 U.S. at 526, 97 S.Ct. at 1310. If compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce, then a finding of federal preemption is inescapable and requires no inquiry into congressional design. *Florida Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Furthermore, federal law may preempt state law even if dual compliance is possible if the state regulation impairs or interferes with the operation of the federal statute. *Doctors Hospital, supra* at 622, accord, *Jones v. Rath, supra* 430 U.S. at 543, 97 S.Ct. at 1318.

■ Applying this analysis, we find that 12 C.F.R. § 210.6 preempts the relevant provisions of the UCC insofar as a conflict is presented. In this case, since neither party has claimed that the Constitution alone prohibits state activity in the bank collection process, we may move directly on to the second inquiry. Here, we find that Congress clearly has not prohibited state regulation of the check collection process. In fact, the Board of Governors, exercising the regulatory power lawfully delegated to them by Congress, has attempted to conform Federal Reserve banking regulations with the Uniform Commercial Code in many instances. However, upon examination of Regulation J, Section 210.6(a) and UCC sections 4–201(1) and 4–202(1), we find that state standards, as set forth in the UCC, present a direct conflict with federal law. Section 210.6 limits a Reserve bank's liability to "senders" of items, while the UCC extends a bank's liability to the owner of an item. The provisions are in conformity when the sender of an item is also its owner; however, when the owner is a remote party, the provisions are in direct conflict. The Reserve bank is either liable to parties more remote than the sender or is not; it cannot be both. Since in this case simultaneous compliance with the federal regulation and the state statute is impossible, the federal law prevails.

Plaintiff creatively seeks to construe Regulation J to avoid any direct conflict between state and federal law. Section 210.6(a) states in part:

A Federal Reserve bank shall not have, nor will it assume, any liability to the sender in respect of any such items and its proceeds except for its own lack of good faith or failure to exercise ordinary care. (Emphasis added by plaintiffs.)

Plaintiff urges that the language underlined is an explicit exception to the limitation of liability set forth in Section 210.6(a) and that as such, it "represents a link between the federal law and the applicable state law". The exception, plaintiff suggests, extends a Reserve bank's liability to nonsenders when the Reserve bank has failed to exercise ordinary care. We disagree because the exception to liability plainly pertains to a senders' liability. Thus, the result of the provision is to limit a Reserve bank's liability to the sender to those occasions in which the Reserve bank acts in bad faith or without ordinary care. In a limited sense, the provision is in conformity with state law in that when the Reserve bank has a legal duty to fulfill, the bank is held to the same standard, that of ordinary care, as non-Reserve banks.

We hold, therefore, that Section 210.6 of Volume 12 of the Code of Federal Regulations conflicts with M.G.L. c. 106 §§ 4–201(1) and 4–202(1). Similarly, any claim the plaintiff could establish under M.G.L. c. 93A would also be preempted by Section 210.6's express limitation of liability to the sender of items. Accordingly, defendant FRB's motion to dismiss is granted.