TRANS–CONTINENTAL INVESTMENT CORPORATION, S. A., a Luxembourg Corporation, Shahriar Rezai and Shahin Rezai, Plaintiffs,

v.

BANK OF the COMMONWEALTH, a Banking Corporation, First Arabian Corporation, S. A., a Luxembourg Corporation, Roger E. Tamraz, Matthew Steckel, Mohammed Muftah, and Jean–Marie Brossard, Defendants.

No. CV 80–768–AWT.

United States District Court, C. D. California.

Oct. 17, 1980.

Richard A. Grossman, Los Angeles, Cal., for plaintiffs.

Andrew S. Clare, and Michael Brourman, Loeb & Loeb, Los Angeles, Cal., for defendants.

## MEMORANDUM ORDER

TASHIMA, District Judge.

This is an action by Trans–Continental Investment Corporation, S.A., a Luxembourg corporation ("TIC") and two of its shareholders for breaches of contracts, fraud, breach of fiduciary duty to depositor and conversion. The two shareholder plaintiffs, Shahriar Rezai and Shahin Rezai (collectively the "Rezais") are citizens of Iran.[1] Defendants in this action and their citizenship and contacts with California appear as follows.[2] Defendant Bank of the Commonwealth (the "Bank") is a Michigan corporation with its principal place of business in Detroit. It maintains no offices outside of Michigan. Defendant First Arabian Corporation, S.A. ("First Arabian") is a Luxembourg corporation. First Arabian owns 77 percent of the outstanding shares of the Bank. It maintains no offices in the United States. Defendant Roger E. Tamraz ("Tamraz") is a citizen and resident of Lebanon and is Chairman of the Board of First Arabian. Defendant Matthew Steckel ("Steckel") is Chairman of the Board of the Bank. Steckel is a resident of Michigan.[3]

The complaint alleges five claims for relief.

The first claim alleges that defendants falsely represented that if the Rezais and others would form a Luxembourg corporation (TIC) and have it deposit $2.5 million in the Bank, two loans, each for $2.5 million, would be made to plaintiff, one for use in a New York real estate venture (the "Varick Project"). In reliance on these representations plaintiffs formed TIC and, on June 26, 1979, deposited $2.5 million with the Bank. The representations are alleged to have been false from the inception and made with the intent to induce the deposit. It is further alleged that plaintiffs were prevented (presumably wrongfully) from withdrawing $1,065,538 of the deposit from TIC's account until December 13, 1979. Damages in the amount of $5 million are alleged.

The second claim for relief alleges that the Bank owed a fiduciary duty to plaintiffs, as depositors, and that the foregoing conduct breached that duty.

The third claim for relief alleges that the Bank's temporary refusal to release the $1,065,538 amounted to a conversion of the funds and resulted in damage to the plaintiffs in the amount of $500,000.

1. The complaint alleges that the Rezais are citizens of California. Shahriar Rezai subsequently filed an affidavit stating that he is a citizen of Iran and, since 1978, a resident of California. At the hearing, plaintiffs' counsel "stipulated" that the Rezais were both citizens of Iran. Although some doubt may appear as to counsel's good faith compliance with Rule 11, Fed.R.Civ.P., in the preparation and filing of the complaint, for purposes of this hearing the Court accepts as true that the Rezais are citizens of Iran.

2. Two of the defendants, Mohammed Muftah, whose citizenship is unknown but who is a resident of Egypt, and Jean–Marie Brossard, a citizen of Switzerland, were voluntarily dismissed on the eve of the instant hearing.

3. Steckel's citizenship is nowhere shown; however, for purposes of testing plaintiffs' diversity allegations, we assume that plaintiffs can in good faith amend their complaint to allege that Steckel is a citizen of Michigan.

The fourth claim for relief alleges that the $2.5 million deposit was made pursuant to a written demand deposit agreement and that this agreement was breached by defendants. Damages of $500,000 are alleged.

The fifth claim for relief alleges that defendants breached an agreement to make loans to plaintiffs in consideration of the deposit and claims $5 million in damages.

Plaintiffs also seek punitive damages on their first, second and third claims.

Jurisdiction is alleged to exist by virtue of the diversity of citizenship of the parties. 28 U.S.C. § 1332.

Defendants Bank and Steckel, appearing specially, have moved to quash service of process and to dismiss for lack of personal jurisdiction, to dismiss for lack of subject matter jurisdiction or to transfer the action to the Eastern District of Michigan.

*Personal Jurisdiction*

The transaction giving rise to this litigation commenced with a meeting in Paris between the Rezais and Tamraz. The only other meetings concerning this transaction took place in Detroit, where the Bank is located, and in New York to discuss a loan to a subsidiary of TIC for the Varick Project. All of the other discussions and negotiations took place by telephone, wire or correspondence. Plaintiffs state that the funds were deposited to TIC's account at the Bank "through a series of international bank transfers." The Bank's records indicate that the funds were received from several banks in New York, Zurich and Chicago. The only specific intended use of the promised loan proceeds was for the Varick Project in New York.

The Bank maintains a correspondent relationship with the Bank of America. It has no office or employee in California and is not qualified to transact business in this State. During the past three years, the Bank has had no more than three loans outstanding to borrowers located in California. At the present time the Bank has two loans to borrowers in California in the aggregate amount of $9.1 million. How actively this loan business was solicited by the Bank, where any solicitations took place and where the loan proceeds were employed do not appear. The Bank's commercial loan portfolio is comprised of 2,500 loans totalling approximately $220 million. The record does not indicate that the Bank has solicited or received deposits from California residents.

Steckel, a resident of Michigan, has not conducted any business in California on behalf of the Bank or otherwise for at least the last six years. He has "only rarely been physically present" in California for any purpose.

In a diversity action, personal jurisdiction is determined by state law and California has exerted jurisdiction to the fullest extent permitted by the Constitution. Cal.Code Civ.Proc. § 410.10; *Sibley v. Superior Court,* 16 Cal.3d 442, 128 Cal.Rptr. 34, 546 P.2d 322. (1976). Thus, the test to be applied is that laid down in *International Shoe v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under that minimum contacts test, a non–resident defendant's activities within the forum state, in order to subject such defendant to the general jurisdiction of the forum, must reach that state of pervasiveness to enable them to be characterized as "substantial" or "continuous and systematic." *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280 (9th Cir. 1977). There does not appear to be general jurisdiction here with respect to the Bank. It maintains no office within the State. It maintains a correspondent relationship with the Bank of America, which would indicate that it relies on the latter to provide banking services in California to it and to its customers, rather than attempting to provide such services itself. The Bank's only forum related activity, not related to this action, consists of two loans aggregating $9.1 million. Loans to California borrowers have never totalled more than three. I find that two loans out of 2,500, comprising approximately four percent of the Bank's commercial loan portfolio, are not of such pervasiveness or substantiality to enable this Court to assert general jurisdiction over the Bank consistant with due process.

■ *Data Disc*, however, provides an alternative, transactional test to be applied when general jurisdiction cannot be asserted:

"(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum–related activities. (3) Exercise of jurisdiction must be reasonable." 557 F.2d at 1287.

Personal jurisdiction over the Bank is also absent under this test, which requires a strong nexus between the transaction in question, defendant's activities in connection therewith and this State. None of the Bank's activities in connection with this action took place in California. The deposit, of course, was made with the Bank in Michigan from non–California sources and, if ordinary banking practice was followed, is, presumably, governed by the laws of Michigan. No loan was ever made. Even under plaintiffs' claims, it does not appear that any loan which the Bank allegedly promised to make was for use in California. Finally, all plaintiffs are aliens and although the Rezais are residents of California, it does not appear that TIC, the depositor and putative borrower, has its principal place of business in California.

Given the lack of personal jurisdiction over the Bank, lack of personal jurisdiction over Steckel requires no discussion. He has had virtually no contact with California, general, limited or in connection with this transaction.

*Subject Matter Jurisdiction*

■ Defendants next move to dismiss the complaint for lack of subject matter jurisdiction. Because it now appears that all plaintiffs are aliens, the only possible basis of diversity jurisdiction is under 28 U.S.C. § 1332(a)(2), as a case between "citizens of a State and citizens or subjects of a foreign state." However, since First Arabian and Tamraz are aliens, there are aliens present as both plaintiffs and defendants; therefore, the complete diversity required under *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), is absent. *Ed & Fred, Inc. v. Puritan Marine Ins. Corp.*, 506 F.2d 757 (5th Cir. 1975).

■ Plaintiffs contend that under the doctrine first enunciated in *Marshall v. Baltimore & Ohio RR*, 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853), that all shareholders of a corporation are conclusively presumed to be citizens of the place of incorporation of the corporation, First Arabian should be presumed to be a citizen of Michigan for purposes of establishing diversity jurisdiction. We need neither to address the current viability of this doctrine nor to determine its applicability to the circumstances of this case for the simple reason that, contrary to plaintiffs' contentions, this doctrine has no applicability to Tamraz solely because he is an officer of a shareholder. Complete diversity of citizenship between all plaintiffs, on the one hand, and all defendants, on the other, is, therefore, lacking.

■ Finally, plaintiffs contend, although not alleged in their complaint, that subject matter jurisdiction exists as against Tamraz under 28 U.S.C. § 1350, which provides:

"The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." [4]

The basis of this contention is that plaintiffs' claim against Tamraz is for fraud only and that fraud is a universally recognized tort.[5] Plaintiffs rely on *Abdul–Rahman*

---

4. Of all of the jurisdictional grants set forth in the Judicial Code, Section 1350 stands alone in containing the "only" limitation. Because it is clear in this case that no subject matter jurisdiction exists, it is not necessary to attempt to ascertain the intent reasonably to be ascribed to Congress in placing this unique limitation on the jurisdictional grant of Section 1350.

5. Although the non–fraud claims appear to be asserted against Tamraz, we again give plaintiffs the benefit of the doubt and assume that

*Omar Adra v. Clift,* 195 F.Supp. 857 (D.Md. 1961), the only modern case holding that district court jurisdiction existed under Section 1350 in a purely private dispute. There, the court held that the unlawful taking of a child in a custody dispute was a tort "in violation of the law of nations." *Id.* at 862–63. All other courts which have had occasion to rule on this little–interpreted section have held, in essence, that the controversy must implicate a treaty or that body of rules and custom governing relations between states *inter se* or between a state and foreign citizens or subjects. This restrictive interpretation of Section 1350 appears to be constitutionally compelled. As stated by Judge Friendly, "The reference to the law of nations must be narrowly read if the section is to be kept within the confines of Article III." *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975).

The Second Circuit's view, and the reason therefor, appear to be correct. Although its result differs, *Abdul–Rahman, supra,* did not consider the question of the need to reconcile Section 1350 with Article III. Since it does not appear that the parties there raised the issue and it was not considered by the court, *Abdul–Rahman's* precedential value is, at best, weak. We follow what we consider to be the better view.

■ Plaintiffs do not claim that any treaty has been violated nor do they suggest that any such claim can be pleaded. Thus, the invocation of Section 1350 jurisdiction is posited directly on their claim that "fraud is a universally recognized tort." This is essentially the same argument that was made in *IIT v. Vencap, Ltd., supra,* and the answer must be the same, *viz.,* while the statement· is undoubtedly true, universal recognition does not, *per se,* make the rule a part of "the law of nations," construed in accordance with Article III. As no other

basis of jurisdiction under Section 1350 consistent with Article III is claimed or appears, *i. e.,* federal question, alienage or any implied jurisdiction, such as protective jurisdiction, it must be held that this court lacks subject matter jurisdiction under Section 1350.[6]

*Summary of Disposition*

Because this Court lacks personal jurisdiction over defendants Bank and Steckel, their motion to quash service of summons should be granted. In the alternative, whether or not personal jurisdiction exists, this Court lacks subject matter jurisdiction because of the absence of complete diversity of citizenship of the parties and because this is not an action over which this Court has jurisdiction under 28 U.S.C. § 1350. Given the affirmative allegations of the complaint, the jurisdictional defects are not of such nature as are amenable to cure by amendment.

*Order*

IT IS THEREFORE ORDERED that:

1. The motion to quash service of process and to dismiss the action for lack of personal jurisdiction over defendants Bank of the Commonwealth and Matthew Steckel is granted.

2. The motion of defendants Bank of the Commonwealth and Matthew Steckel to dismiss the action for lack of subject matter jurisdiction is granted.

3. On the Court's own motion, this action is dismissed as against all remaining defendants for lack of subject matter jurisdiction.

4. The dismissals are of the action and, thus, without leave to amend and without prejudice.

the complaint could be amended to assert only the fraud claim against Tamraz.

**6.** Although not clearly articulated, plaintiffs also appear to be contending that there is a split–basis for subject matter jurisdiction. This would seem to follow from their contention that there is diversity of citizenship as against all defendants, except Tamraz, and that Section

1350 jurisdiction exists as against Tamraz. Because, as stated above, Section 1350 jurisdiction fails, the issue of whether the absence of complete diversity jurisdiction under Section 1332, aliens being present on both sides, can be cured by resort to Section 1350, need not be reached.