**WASHINGTON PETROLEUM AND SUPPLY COMPANY, Plaintiff,**

v.

**GIRARD BANK, Federal Reserve Bank of Philadelphia, Federal Reserve Bank of New York, and Midlantic National Bank, Defendants.**

Civ. No. 82–1457.

United States District Court,
M.D. Pennsylvania.

May 3, 1983.

Krawitz & Ridley, P.C. Joseph F. Kameen, Milford, Pa., for plaintiff.

Morris R. Brooke, Gary R. Battistoni, Drinker, Biddle & Reath, Philadelphia, Pa., for Midlantic Nat. Bank.

Thomas C. Baxter, Jr., Office of General Counsel, New York City, for Federal Reserve Bank of New York.

Hiliary Hollaway, Philadelphia, Pa., for Federal Reserve Bank of Philadelphia.

Edward J. Hayes, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Girard Bank.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

The Plaintiff, Washington Petroleum and Supply Company, a New Jersey corporation, instituted this action against the four Defendant banking institutions [1] seeking damages for their alleged negligence in the handling of a check. The case was originally filed in the Court of Common Pleas of Monroe County [2] but, by petition dated November 22, 1982, was removed to this Court by the Defendant New York Fed. 28 U.S.C. § 1441(b). Jurisdiction of the Court is asserted pursuant to 12 U.S.C. § 632 (1957) by reason of the presence of the two Federal Reserve banks as Defendants. Presently pending for the Court's consideration are two motions filed by the Defendant New York Fed. The first is a motion to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction over it, Fed.R.Civ.P. 12(b)(2) or, alternatively, that the Complaint fails to state a claim against it upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The second is a motion to dismiss the cross-claims of the Defendants Girard Bank and Midlantic National Bank. For the reasons set forth herein, we will dismiss the Complaint as to Defendants New York Fed and Philadelphia Fed and remand this case back to the state court in which it was initially filed. In view of this remand, it is not necessary or appropriate for the Court to consider the New York Fed's motion to dismiss the cross-claims.

### I

For purposes of our review of the Defendant New York Fed's motion to dismiss the Complaint, we must, of course, accept as true the factual allegations of the Plaintiff's pleadings. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); see *Sharpe v. Philadelphia Housing Authority*, 693 F.2d 24, 25 (3d Cir.1982). On February 17, 1982, a third-party, Master Mobile Mechanics, Inc., issued a check payable to the Plaintiff in the amount of $16,690.21. Complaint, ¶ 6. On that same day, Plaintiff deposited the check in its account in First Eastern Bank and the check was processed in a cash letter to Defendant Girard Bank. *Id.*, ¶¶ 7–8. On February 18, 1982, Girard Bank sent the check to Midlantic National Bank as "Payor bank" in the Federal Reserve

1. Girard Bank is a banking corporation organized and existing under the laws of Pennsylvania having its principal place of business in Philadelphia, Pennsylvania. Federal Reserve Bank of Philadelphia (hereinafter Philadelphia Fed) and Federal Reserve Bank of New York (hereinafter New York Fed) are federally chartered corporations having their principal place of business in Philadelphia, Pennsylvania and New York, New York, respectively. Midlantic National Bank is a federally chartered national banking corporation having its principal place of business in West Orange, New Jersey.

2. See Court No. 2440—Civil—1982—Court of Common Pleas of Monroe County.

Collection System which, the next day, notified the New York Fed that the check was being dishonored for insufficient funds. *Id.*, ¶¶ 9–10. On February 19, 1982, the New York Fed sent a wire notice of the dishonor to the Philadelphia Fed which, in turn, notified Girard Bank. *Id.*, ¶¶ 11–12. On or about February 26, 1982, Girard Bank received the actual check from the Philadelphia Fed and forwarded it to First Eastern Bank. First Eastern Bank received it on March 1, 1982 and charged the Plaintiff's account for the amount of the check. On March 5, 1982, the Plaintiff received notice that the check was dishonored. *Id.*, ¶¶ 13–15.

In the present action, the Plaintiff contends that from February 17 until March 5, 1982, it continued to maintain Master Mobile Mechanics, Inc. on a consignment basis in reliance upon its ability to pay, since the check in question had never been returned. *Id.*, ¶ 16. As a result of the dishonor, the Plaintiff alleges it has suffered monetary losses in the amount of the check ($16,-690.21), as well as lost additional consigned goods in the amount of $18,257.05. Count III of the Complaint alleges that the Defendant New York Fed failed to use ordinary care in the processing of the notice of dishonor it received from Midlantic National Bank on February 19, 1982, and in forwarding this notice to the next bank in the check collection process. *Id.*, ¶ 31.

## II

We turn first to consider the Defendant New York Fed's motion to dismiss the Complaint against it on the basis of lack of personal jurisdiction. In opposing the present motion, the Plaintiff contends that this Court can assert *in personam* jurisdiction over the New York Fed pursuant to the Pennsylvania long-arm statute, 42 Pa. C.S.A. §§ 5301–5308 and §§ 5321–5322.

Specifically, the Plaintiff relies upon sections 5322(a)(1) and (4)[3] of that statute.

At the outset, we note that since the Pennsylvania long-arm statute makes the exercise of jurisdiction over a nonresident co-extensive with the permissible limits of the due process clause of the Fourteenth Amendment,[4] our inquiry can be limited to deciding whether it would be a denial of due process to assert jurisdiction over the New York Fed. *Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 567, 426 A.2d 635 (1980); *Hart v. McCollum*, 249 Pa.Super. 267, 272, 376 A.2d 644 (1977); see *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1269 (9th Cir.1981); *McCabe v. Kevin Jenkins and Associates, Inc.*, 531 F.Supp. 648, 649–50 (E.D.Pa.1982). In *Reliance Steel Products v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982), our Court of Appeals recently outlined a two-step process to be undertaken when considering this jurisdictional challenge:

The initial determination that must be made is whether the claim or cause of action which is being pursued arises from the defendant's forum related activites or from non-forum related activities. *Schwilm v. Holbrook*, 661 F.2d 12 (3rd Cir.1981). The focus must be on the relationship of the transaction giving rise to the law suit to the forum where the plaintiff seeks to litigate it. *Paolino v. Channel Home Centers, Inc.*, 668 F.2d 721, 724 (3rd Cir.1981).

If the claim pursued arises from forum related activity, the court must determine whether there are enough contacts with the forum arising out of *that* transaction in order to justify the assertion of jurisdiction over the out-of-state defendant. Such examination of affiliating cir-

---

**3.** These sections provide:

A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth.

\* \* \* \* \* \*

(2) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

**4.** See 42 Pa.C.S.A. § 5322(b).

cumstances is only appropriate in the analysis of the forum related claim.

If the claim pursued arises from non-forum related activity, the plaintiff must demonstrate that in other respects the defendant has maintained "continuous and substantial" forum affiliations. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Campagnie des Bauxites de Guinea v. Ins. Co. of North America*, 651 F.2d 877 (3rd Cir.1981). Obviously this is a much higher threshold to meet for the facts required to assert this "general" jurisdiction must be "extensive and persuasive." Id. at 890 (Gibbons, J., dissenting).

675 F.2d at 588–89 (emphasis by court). See *Koenig v. International Brotherhood of Boilermakers, supra*, 284 Pa.Super. at 568, 426 A.2d 635; *Union National Bank of Pittsburgh v. L.D. Pankey Institute*, 284 Pa.Super. 537, 541–42, 426 A.2d 624 (1980).

The New York Fed is a federally-chartered corporate entity, created pursuant to the Federal Reserve Act of 1913 and operates under the general supervision of the Federal Reserve Board. The United States is divided into twelve (12) Federal Reserve Districts. The New York Fed is located in the Second Federal Reserve District and serves the geographic area that includes the State of New York, part of southwestern Connecticut and the twelve northerly counties of New Jersey. The capital stock of the New York Fed is owned entirely by member banks within that geographic region. 12 U.S.C. § 321. The New York Fed holds the cash reserves of depository institutions located in the Second Federal Reserve District and provides these institutions with the following services:

a) currency and coin services;

b) check clearing and collection services;

c) wire transfer services;

d) automated clearing house services;

e) settlement services; and

f) securities safekeeping services.

Sabel Affidavit, ¶¶ 3–4.[5] See 12 U.S.C. § 248a(b). It also supervises and examines certain depository institutions, bank holding companies, Edge Act and Agreement Corporations, and limited purpose trust companies, all of which must be situated within the Second Federal Reserve District. Sabel Affidavit, ¶ 5. In general, the Federal Reserve Banks also take part in establishing the nation's monetary policies, the primary responsibility of the Federal Reserve System, and provide checking accounts for the Treasury, issue and redeem Government securities, and act in other ways as the fiscal agent for the United States Government. See Board of Governors of the Federal Reserve System, *Pamphlet on Federal Reserve Banks*, Defendant's Exhibit B.

The New York Fed has no property, offices, employees, subsidiaries, affiliates or agents located in the Commonwealth of Pennsylvania nor does it regularly transact business in this state. Sabel Affidavit, ¶¶ 7–8. Its only nexus with Pennsylvania is that it does maintain an account on the books of the Philadelphia Fed. *Id.*, ¶ 9.

■ In appraising the constitutional adequacy of the New York Fed's forum-related activities, the Court agrees with its characterization of the relationship between the New York Fed and Philadelphia Fed as being analogous to a "correspondent relationship" between banks, *i.e.*, a situation in which "a forwarding bank ... maintains a deposit account [with another bank] to whom it sends checks for forwarding and collection." *Citizens State Bank v. Martin*, 227 Kan. 580, 587, 609 P.2d 670, 676 (1980). See *Trans-Continental Investment Corp. v. Bank of the Commonwealth*, 500 F.Supp. 565, 568 (C.D.Cal. 1980). Such a business relationship has uniformly been held to be an insufficient basis upon which to assert *in personam* jurisdiction over an otherwise foreign defendant. *Trans-Continental Investment Corp. v. Bank of the Commonwealth, supra; Dempster Plaza State Bank v. Federal Reserve Bank of San Francisco*, Civ.

---

**5.** Bradley K. Sabel, Secretary of the Federal Reserve Bank of New York.

No. 80–C–2611 (N.D.Ill. Sept. 23, 1980); *Sears Bank and Trust Co. v. Luckman,* 61 Ill.App.3d 260, 18 Ill.Dec. 520, 377 N.E.2d 1156 (1978). In *Dempster,* the Court reasoned:

> The mere passage of a check through the clearing process does not constitute purposeful availment by the depositor's bank of the privilege of conducting activities within the forum. Cf. *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958). Otherwise banking institutions would be subject to the jurisdiction of each state in which the collection process may have an effect.

See *Jack O'Donnell Chevrolet, Inc. v. Shankles,* 276 F.Supp. 998, 1004 (N.D.Ill. 1967). Similarly, in this case it would appear that the mere presence of the New York Fed's account on the books of the Philadelphia Fed, its sole contact with this state, as revealed by the uncontroverted affidavit of its Secretary, is an inadequate ground upon which to justify assertion of personal jurisdiction over this out-of-state defendant. Whether the Plaintiff's claim is classified as forum-related or non-forum related under the Third Circuit's analysis in *Reliance Steel Products, supra,* the maintenance of the suit in this forum against New York Fed would offend "traditional notions of fair play and substantial justice." *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158; see *Hanson v. Denckla, supra; Empire Abrasive Equipment Corp. v. H.H. Watson, Inc.,* 567 F.2d 554 (3d Cir.1976). See also *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).[6] Accordingly, since, on the present factual record, the requisite "minimum contacts" do not exist between the moving Defendant and the forum state, exercise of *in person-*

*am* jurisdiction by this Court would run afoul of the due process clause of the United States Constitution. *Id.* at 291, 100 S.Ct. at 564; see *Rogers v. Icelandic/Flugleider, International,* 522 F.Supp. 670, 673 (E.D.Pa.1981). The Plaintiff contends, however, that it should be given the opportunity to present additional evidence concerning the "number and the extent of contacts" the New York Fed has with Pennsylvania through its account relationship with the Philadelphia Fed, and has sought discovery on this issue.[7] This argument has some merit. See *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc., supra,* 567 F.2d at 559; 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1351 at 566–67 (1969). We need not fully explore the personal jurisdiction question, however, since the New York Fed's alternative basis for dismissal wholly resolves the case before this Court. See *Elliott & Sons, Inc. v. Nuodex Products Co.,* 243 F.2d 116, 119 (1st Cir.), *cert. denied,* 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957); cf. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979) ("when there is a sound prudential justification for doing so, ... a court may reverse the normal order of considering personal jurisdiction and venue.") Therefore, we will proceed to a discussion of that issue.

### III

### A

Assuming *arguendo* that this Court could assert personal jurisdiction over the New York Fed, we nevertheless are compelled to grant that Defendant's motion to dismiss the Complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The basis of this as-

---

**6.** One of the factors a court may consider in the minimum-contacts analysis is the states' interest in providing a forum to its residents for the adjudication of disputes occuring within its borders. *Ely Clover Products, Inc. v. National Broadcasting Company,* 572 F.2d 119, 120 (3d Cir.1978); *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc., supra,* 567 F.2d at 557–58. That interest is arguably not furthered here

since the Plaintiff is a New Jersey corporation with its principal place of business in Phillipsburg, New Jersey. Complaint, ¶ 1.

**7.** See Document # 29. The New York Fed objected to answering any of these interrogatories on March 3, 1983 and no motion to compel discovery has been filed.

pect of the moving Defendant's motion is Subpart A of Regulation J of the Board of Governors of the Federal Reserve System, 12 C.F.R. §§ 210.1–.15 (1982), which "governs the collection of checks and other cash and noncash items by Federal Reserve Banks." 12 C.F.R. § 210.1. Specifically, the Defendant relies upon section 210.6, which provides in pertinent part:

> (a)(1) *Status and liability.* A Reserve Bank shall act only as the *sender's agent* in respect of an item.... A Reserve Bank shall not act as agent or subagent of an owner or holder of an item other than the *sender.* A Reserve Bank shall not have or assume any liability to the sender in respect of an item or its proceeds except for the Reserve Bank's own lack of good faith or failure to exercise ordinary care. (emphasis added).

The term "sender" is defined therein as follows:

> ▆▆▆ "Sender" means any of the following that

> sends an item[8] to a Reserve Bank: a depository institution, a clearing institution, another Reserve Bank, an international organization, a foreign correspondent, or a branch or agency of a foreign bank maintaining reserves under section 7 of the International Banking Act of 1978 (12 U.S.C. 347d, 3105).

**8.** The term "item" is defined in the Federal Reserve System regulations as follows:

"Item" means an instrument for the payment of money, whether negotiable or not, that is: (1) Payable in a Federal Reserve District ...; (2) Sent by a sender to a Reserve Bank for handling under this subpart; and (3) Collectible in funds acceptable to the Reserve Bank of the District in which the instrument is payable.

Unless otherwise indicated, "item" includes both cash and noncash items.

12 C.F.R. § 210.2(g) (footnote omitted).

**9.** Under the relevant provisions of the UCC, a Federal Reserve bank, which apparently would qualify as a "collecting bank" pursuant to 13 Pa.C.S.A. § 4105, may be held liable to the "owner of the item", 13 Pa.C.S.A. § 4201(a), not just its "sender", as would be the case under Regulation J, for its lack of ordinary care in:

(1) presenting an item or sending it for presentment;

12 C.F.R. § 210.2(k). Contrary to the Plaintiff's assertions, "[i]t is clear the intent of that regulation is to limit liability of a Federal Reserve bank, so as to exclude all remote parties, such as a depositor of a sending bank, from obtaining damages directly from a Federal Reserve bank for its negligence in collection." *Appliance Buyers Credit Corp. v. Prospect National Bank of Peoria,* 505 F.Supp. 163, 164 (C.D. Ill.1981); accord *Childs v. Federal Reserve Bank of Dallas,* Civ. No. 4–82–73–K at 3 (N.D.Tex. Oct. 5, 1982) ("Regulation J limits the entities to whom the Federal Reserve Bank is liable to [a] sender."); *Colonial Cadillac, Inc. v. Shawmut Merchants Bank, N.A.,* 488 F.Supp. 283, 285 (D.Mass. 1980) ("Section 210.6 in effect limits a Federal Reserve bank's liability to those who 'send' items to the Reserve Banks."). The fact that the Uniform Commercial Code (UCC), which also applies to the bank collection process, establishes a broader standard of care is not controlling.[9] In this particular factual setting, such state law provisions would be preempted by the federal law, *i.e.,* Regulation J, applicable to Federal Reserve banks.[10] As explained by the Court in *Colonial Cadillac, Inc., supra:*

> [U]pon examination of Regulation J, Section 210.6(a) and UCC sections 4–201(1) and 4202(1), we find that state standards,

(2) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the transferor of the bank or directly to the depositary bank ... after learning that the item has not been paid or accepted, as the case may be; (3) settling for an item when the bank receives final settlement; (4) making or providing for any necessary protest; and (5) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

13 Pa.C.S.A. § 4202(a).

**10.** "Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Federal Savings & Loan Association v. DeLa Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). See *Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979).

as set forth in the UCC, present a direct conflict with federal law. Section 210.6 limits a Reserve bank's liability to "senders" of items, while the UCC extends a bank's liability to the owner of an item. The provisions are in conformity when the sender of an item is also its owner; however, when the owner is a remote party, the provisions are in direct conflict. The Reserve bank is either liable to parties more remote than the sender or is not; it cannot be both. Since in this case simultaneous compliance with the federal regulation and the state statute is impossible, the federal law prevails. 488 F.Supp. at 286. See also *Northbrook Trust & Savings Bank v. Palos Bank and Trust Co.*, 505 F.Supp. 1002 (N.D.Ill.1981); *Dempster Plaza State Bank v. Valley Bank of Nevada, supra.*

In applying Regulation J to the allegations of the instant Complaint, it is apparent that the Plaintiff, as merely a remote party in the check collection process, is not a "sender", as that term is defined in 12 C.F.R. § 210.2(k). Accordingly, there can be no direct liability on the part of the New York Fed to the Plaintiff; thus, the Complaint fails to state a viable claim against this Defendant. Fed.R.Civ.P. 12(b)(6).

### B

■ The above analysis of the limited class of entities to whom a Federal Reserve bank can be liable under the "sender" rule of Regulation J applies with equal force to the Plaintiff's claim against the Defendant Philadelphia Fed.[11] With respect to this Defendant, it is also abundantly clear from the face of the Complaint[12] that the Plaintiff was not a "sender" of the check in question to the Philadelphia Fed. In accordance with our foregoing discussion, the Complaint therefore also fails to state a cognizable claim against the Philadelphia Fed and should be dismissed as to this Defendant, even though it has not filed an appropriate motion. While we are mindful that it is generally inadvisable to grant summary judgment or dismiss a pleading as to a non-moving co-defendant since the plaintiff seemingly would not have an opportunity to argue against the non-movant's position, nonetheless, we believe this is an exceptional and appropriate circumstance to do so. In this case, the Philadelphia Fed stands in the exact legal position as does the New York Fed in terms of ultimate responsibility to the Plaintiff for the alleged lack of due care in the handling of its check, *i.e.*, it cannot be liable because of the "sender" rule. Dispensing with the usual requirement of the filing of a formal motion, while of course not being the preferred method of disposition, would, however, serve the interests of judicial economy here. More importantly, it would not prejudice the rights of the Plaintiff since it has been afforded a full and fair opportunity to present its arguments concerning a Federal Reserve bank's Regulation J defense in its briefing of the New York Fed's motion to dismiss. See Document # 13. Under these circumstances, as this Court has recently noted in an analogous context, "[t]here could be no substantially different defenses offered ... and no different facts to be developed. It would serve no purpose, therefore, to require further pleadings or motions on the issue of the ... [co-defendant's] liability since ... [it] cannot be held responsibile in a case of this nature." *Hyder v. McLaughlin*, Civ. No. 81–0824, slip op. at 11 (M.D.Pa. Sept. 28, 1982) *aff'd without opinion*, 709 F.2d 1492 (3d Cir.1983) (summary judgment to nonmoving co-defendant); see *United States v. Mojac Construction Corp.*, 190 F.Supp. 622, 631 (E.D.N.Y.1960) (same); *Field v. Lew*, 184 F.Supp. 23, 29 (E.D.N.Y.1960) (same). Moreover, it is well settled that "even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief

---

**11.** Indeed, Philadelphia Fed has raised the rule as an affirmative defense in its Answer to the Complaint recently filed with the Court. Document # 30, ¶ 42.

**12.** See Complaint, Count II, ¶¶ 23–27. The substantive allegations relating to liability contained therein are the same as those against the New York Fed.

can be granted ... where the inadequacy of the complaint is apparent as a matter of law." *Coggins v. Carpenter,* 468 F.Supp. 270, 279 (E.D.Pa.1979); see *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980).[13] See generally 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 (1969). In view of our conclusion regarding the applicability of the "sender" rule defense to Federal Reserve banks on the New York Fed's motion to dismiss, we will therefore dismiss the instant Complaint *sua sponte* as to the Defendant Philadelphia Fed. See *Noonan v. Granville-Smith,* 537 F.Supp. 23, 29 (S.D. N.Y.1981) (dismissal of RICO counts as to non-moving co-defendants on basis that prior "reasoning would mandate that such a motion be granted if made."); *Raitport v. Chemical Bank,* 74 F.R.D. 128, 134 (S.D.N. Y.1977) (dismissal of non-moving co-defendant banks on basis that "collateral estoppel defense is clearly applicable to all of the commercial banks...."); *Walner v. Friedman,* 410 F.Supp. 29, 34 (S.D.N.Y.1975) (dismissal of non-moving co-defendant in securities action since his position was "indistinguishable from that of the other defendants."); *Clinton Community Hospital Corp. v. Southern Maryland Medical Center,* 374 F.Supp. 450, 453–54 (D.Md. 1974), *aff'd per curiam,* 510 F.2d 1037 (4th Cir.), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975).

## C

■ With the dismissal of the New York Fed and Philadelphia Fed from this action, a federal basis of subject-matter jurisdiction ceases to exist. Under these circumstances, we believe the appropriate course of action to take is to remand this case to the Court of Common Pleas of Monroe County for further disposition of the remaining nonfederal claims. See 28 U.S.C.

§ 1447(c). As aptly explained by the Court in *Murphy v. Kodz,* 351 F.2d 163, 167–68 (9th Cir.1965):

> Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is, as Judge Merkill of this court has written, akin to 'making the tail wag the dog' for the District Court to retain jurisdiction.... These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State Court.

In ordering this matter to be sent back to the state court, we concur in the views of those federal courts which, in similar settings, have emphasized concerns of comity and federalism and have "encourage[d] remanding to the state courts cases in which state court adjudication can properly claim primacy of interst." *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 562 (2d Cir. 1978); see *Ondis v. Barrows,* 538 F.2d 904, 908 (1st Cir.1976). See also *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1376–77 n. 6 (5th Cir.1980); *Hinkle's Jeep Sales, Inc. v. Villa Enterprises, Inc.,* 90 F.R.D. 49, 52 (S.D.Fla.1981); *Strusiner v. Perlin,* 478 F.Supp. 464, 468 (N.D.Ill. 1979).

An appropriate Order will be entered.

## ORDER

NOW, this 3rd day of May, 1983, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. The motion of the Defendant New York Fed to dismiss the Complaint is granted.

2. The Complaint is dismissed as to the Defendant Philadelphia Fed.

---

**13.** In *Bryson,* our Court of Appeals stated that certain protections must be guaranteed a plaintiff before a district court may *sua sponte* dismiss a complaint, *viz.,* "[a] court may not dismiss a complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief.... In addition, because judgment on the pleadings results in an early assessment of the merits of plaintiff's action, the plaintiff must be given the safeguard of having all its allegations taken as true and 'all inferences favorable to plaintiff will be drawn....'" 621 F.2d at 559 (citations omitted). We have considered the present issue within these guidelines.

3. The case is remanded to the Court of Common Pleas of Monroe County, Pennsylvania, for further proceedings and the Clerk of Court is directed to forward the case file and all other appropriate documents to that Court.